# Commonwealth of Massachusetts

SUFFOLK, SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 2084CV01554

TIMOTHY FRASER              , PLAINTIFF(S),

v.

MASSACHUSETTS BAY TRANSPORTATION
AUTHORITY, ET. AL.              , DEFENDANT(S)

**RECEIVED**

AUG 2 0 2020

SUPERIOR COURT-CIVIL
MICHAEL JOSEPH DONOVAN
CLERK/MAGISTRATE

## SUMMONS

THIS SUMMONS IS DIRECTED TO Massachusetts Bay Trans. Auth. M (Defendant's name)

You are being sued.  The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the Suffolk Superior     Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1.   **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story.  You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff.  **If you need more time to respond, you may request an extension of time in writing from the Court.**

2.   **How to Respond.**  To respond to this lawsuit, you must file a written response with the court <u>and</u> mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented).  You can do this by:

   a.   Filing your **signed original** response with the Clerk's Office for Civil Business, Suffolk Sup.Court, 3 Pemberton Sq.(address), by mail or in person, **AND**
   Boston, MA 02108

   b.   Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address:  Joseph D. Feaster, Esq.
   183 State Street, Suite 6, Boston, MA 02109

3.   **What to include in your response.**  An "Answer" is one type of response to a Complaint.  Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer.  You can also respond to a Complaint by filing a "**Motion to Dismiss,**" if you believe that the complaint is legally invalid or legally insufficient.  A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

4.   **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5.   **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on _____July 17_____, 2020.

*Michael Joseph Donovan*

Michael Joseph Donovan

Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS



**Suffolk County Sheriff's Department** • 132 Portland Street, Boston, MA 02114 • (617) 704-6999

*Suffolk, ss.*

**August 14, 2020**

**I hereby certify and return that on 8/13/2020 at 10:25 AM I served a true and attested copy of the Summons, Complaint, Cover Sheet and Tracking Order in this action in the following manner: To wit, by delivering in hand to William York, Legal Representative, agent and person in charge at the time of service for Massachusetts Bay Transportation Authority, at 10 Park Plaza Suite 3910 Boston, MA 02116 . Attest/Copies ($5.00) Basic Service Fee (IH) ($30.00) Postage and Handling ($1.00) Total: $36.00**

Deputy Sheriff     Terrance Williams

*Terrance William*

*Deputy Sheriff*

# Commonwealth of Massachusetts

SUFFOLK, SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO.   2084CV01554

RECEIVED

TIMOTHY FRASER _____, PLAINTIFF(S),

v.

MASSACHUSETTS BAY TRANSPORTATION
AUTHORITY, ET. AL _____, DEFENDANT(S)

AUG 2 0 2020

SUPERIOR COURT CIVIL
MICHAEL JOSEPH DONOVAN
CLERK/MAGISTRATE

### SUMMONS

THIS SUMMONS IS DIRECTED TO MBTA Officer James Davie _____. (Defendant's name)

<u>You are being sued</u>.  The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the __Suffolk Superior__ Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1.  <u>You must respond to this lawsuit in writing within 20 days</u>. If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story.  You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff.  **If you need more time to respond, you may request an extension of time in writing from the Court.**

2.  **How to Respond.**  To respond to this lawsuit, you must file a written response with the court <u>and</u> mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented).  You can do this by:

    a.  Filing your signed original response with the Clerk's Office for Civil Business Suffolk Sup Court, 3 Pemberton Sq, (address), by mail or in person, __AND__
    Boston, MA 02108

    b.  Delivering or mailing a copy of your response to the Plaintiff's Attorney/Plaintiff at the following address:  Joseph D. Feaster, Esq.
    183 State Street, Suite 6, Boston, MA 02109

3.  **What to include in your response.**  An "Answer" is one type of response to a Complaint.  Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer.  You can also respond to a Complaint by filing a "Motion to Dismiss," if you believe that the complaint is legally invalid or legally insufficient.  A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

4.   **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5.   **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on _____July 17_____, 20 _20_.

*Michael Joseph Donovan*

Michael Joseph Donovan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS



**Suffolk County Sheriff's Department** • 132 Portland Street, Boston, MA 02114 • (617) 704-6999

*Suffolk, ss.*

August 12, 2020

I hereby certify and return that on 8/10/2020 at 3:40 PM I served a true and attested copy of the Summons, Complaint, Cover Sheet and Tracking Order in this action in the following manner: To wit, by delivering in hand to Officer Flynn, agent and person in charge at the time of service for MBTA Officer James Davie at 240 Southampton Street Boston, MA 02118 . In this service hereof it was necessary and I actually used a motor vehicle 4 miles. Attest/Copies ($5.00) Basic Service Fee (IH) ($30.00) Postage and Handling ($1.00) Total: $36.00

*Terrance Williams*

Deputy Sheriff  Terrance Williams

_____
*Deputy Sheriff*

## Commonwealth of Massachusetts

SUFFOLK, SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 2084CV01554

RECEIVED

AUG 2 0 2020

SUPERIOR COURT-CIVIL
MICHAEL JOSEPH DONOVAN
CLERK/MAGISTRATE

TIMOTHY FRASER_____, PLAINTIFF(S),

v.

MASSACHUSETTS BAY TRANSPORTATION
AUTHORITY, ET. AL._____, DEFENDANT(S)

### SUMMONS

THIS SUMMONS IS DIRECTED TO  MBTA Officer Taylor_____ . (Defendant's name)

You are being sued.  The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the Suffolk Superior___  Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1.  **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story.  You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff.  **If you need more time to respond, you may request an extension of time in writing from the Court.**

2.  How to Respond.  To respond to this lawsuit, you must file a written response with the court <u>and</u> mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented).  You can do this by:

    a.  Filing your **signed original** response with the Clerk's Office for Civil Business, Suffolk Sup Court, 3 Pemberton Sq (address), by mail or in person, **AND**
    Boston, MA 02108
    b.  Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address:  Joseph D. Feaster, Esq.
    183 State Street, Suite 6, Boston, MA 02109

3.  What to include in your response.  An "Answer" is one type of response to a Complaint.  Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer.  You can also respond to a Complaint by filing a "**Motion to Dismiss**," if you believe that the complaint is legally invalid or legally insufficient.  A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

4.   **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5.   **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on _____July 17_____, 2020 .

*Michael Joseph Donovan*
Michael Joseph Donovan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS



**Suffolk County Sheriff's Department** • 132 Portland Street, Boston, MA 02114 • (617) 704-6999

*Suffolk, ss.*

August 12, 2020

I hereby certify and return that on 8/10/2020 at 3:40 PM I served a true and attested copy of the Summons, Complaint, Cover Sheet and Tracking Order in this action in the following manner: To wit, by delivering in hand to Officer Flynn, agent and person in charge at the time of service for MBTA Officer Taylor at 240 Southampton Street Boston, MA 02118 . In this service hereof it was necessary and I actually used a motor vehicle 4 miles.   Attest/Copies ($5.00) Basic Service Fee (1H) ($30.00) Postage and Handling ($1.00) Total: $36.00

Deputy Sheriff   Terrance Williams

*Terrance Williams*
_____
*Deputy Sheriff*

## Commonwealth of Massachusetts

SUFFOLK, SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO.   2084CV01554

TIMOTHY FRASER                    , PLAINTIFF(S),

v.

MASSACHUSETTS BAY TRANSPORTATION
AUTHORITY, ET. AL.           , DEFENDANT(S)

**RECEIVED**

**AUG 2 0 2020**

SUPERIOR COURT-CIVIL
MICHAEL JOSEPH DONOVAN
CLERK MAGISTRATE

### SUMMONS

THIS SUMMONS IS DIRECTED TO MBTA Officer Brian Harer            . (Defendant's name)

<u>You are being sued.</u>   The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the Suffolk Superior      Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story.  You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff.  **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.**  To respond to this lawsuit, you must file a written response with the court and mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented).  You can do this by:

   a. Filing your signed original response with the Clerk's Office for Civil Business, Suffolk Sup Court, 3 Pemberton Sq. (address), by mail or in person,  AND
   Boston, MA 02108
   b. Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address:   Joseph D. Feaster, Esq.
   183 State Street, Suite 6, Boston, MA 02109

3. **What to include in your response.** An "Answer" is one type of response to a Complaint.  Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer.  You can also respond to a Complaint by filing a "Motion to Dismiss," if you believe that the complaint is legally invalid or legally insufficient.  A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under Mass. R. Civ. P. 12. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

4.   **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5.   **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on ____July 17_____, 20_20__.

*Michael Joseph Donovan*
Michael Joseph Donovan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS



**Suffolk County Sheriff's Department** • 132 Portland Street, Boston, MA 02114 • (617) 704-6999

*Suffolk, ss.*

August 12, 2020

I hereby certify and return that on 8/10/2020 at 3:40 PM I served a true and attested copy of the Summons, Complaint, Cover Sheet and Tracking Order in this action in the following manner: To wit, by delivering in hand to Officer Flynn, agent and person in charge at the time of service for MBTA Officer Brian Harer at 240 Southampton Street Boston, MA 02118 . In this service hereof it was necessary and I actually used a motor vehicle 4 miles. Attest/Copies ($5.00) Basic Service Fee (IH) ($30.00) Conveyance ($1.20) Postage and Handling ($1.00) Travel ($2.56) Total: $39.76

*Terrance Williams*

Deputy Sheriff  Terrance Williams

_____
*Deputy Sheriff*

# Commonwealth of Massachusetts

SUFFOLK, SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 2084CV01554

TIMOTHY FRASER_____, PLAINTIFF(S),

v.

MASSACHUSETTS BAY TRANSPORTATION
AUTHORITY, ET. AL._____, DEFENDANT(S)

**SUMMONS**

RECEIVED

AUG 2 0 2020

SU~~___~~
MICHAEL JOSE~~___~~ CIVIL
CI~~___~~

THIS SUMMONS IS DIRECTED TO MBTA Officer Bell_____ (Defendant's name)

You are being sued.  The Plaintiff(s) named above has started a lawsuit against you. A copy of the
Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been
filed in the Suffolk Superior____ Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1.   You must respond to this lawsuit in writing within 20 days. If you do not respond, the court may decide
the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the
opportunity to tell your side of the story.  You must respond to this lawsuit in writing even if you expect
to resolve this matter with the Plaintiff.  **If you need more time to respond, you may request an
extension of time in writing from the Court.**

2.   How to Respond.  To respond to this lawsuit, you must file a written response with the court and mail a
copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented).  You can do this by:

a.   Filing your signed original response with the Clerk's Office for Civil Business,Suffolk Sup.Court,
3 Pemberton Sq.
Boston, MA 02108 (address), by mail or in person, AND

b.   Delivering or mailing a copy of your response to the Plaintiff's Attorney/Plaintiff at the following
address:   Joseph D. Feaster, Esq.
183 State Street, Suite 6, Boston, MA 02109

3.   What to include in your response.  An "Answer" is one type of response to a Complaint.  Your Answer
must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint.
Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to
use them in court. If you have any claims against the Plaintiff (referred to as counterclaims) that are
based on the same facts or transaction described in the Complaint, then you must include those claims
in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this
lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your
Answer or in a written demand for a jury trial that you must send to the other side and file with the
court no more than 10 days after sending your Answer.  You can also respond to a Complaint by filing a
"Motion to Dismiss," if you believe that the complaint is legally invalid or legally insufficient.  A Motion
to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12**. If
you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions"
described in the rules of the Court in which the complaint was filed, available at
www.mass.gov/courts/case-legal-res/rules of court.

4.     **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5.     **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on _____July 17_____, 20_20_.

*Michael Joseph Donovan*

Michael Joseph Donovan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS



**Suffolk County Sheriff's Department** • 132 Portland Street, Boston, MA 02114 • (617) 704-6999

*Suffolk, ss.*

August 12, 2020

I hereby certify and return that on 8/10/2020 at 3:40 PM I served a true and attested copy of the Summons, Complaint, Cover Sheet and Tracking Order in this action in the following manner: To wit, by delivering in hand to Officer Flynn, agent and person in charge at the time of service for MBTA Officer Bell at 240 Southampton Street Boston, MA 02118 . In this service hereof it was necessary and I actually used a motor vehicle 4 miles.   Attest/Copies ($5.00) Basic Service Fee (IH) ($30.00) Postage and Handling ($1.00) Total: $36.00

Deputy Sheriff  Terrance Williams

*Terrance Williams*

_____
*Deputy Sheriff*

# Commonwealth of Massachusetts

**Suffolk, ss.**

SUPERIOR COURT
DEPARTMENT OF THE TRIAL COURT
CIVIL ACTION NO.: 2084 CV 01554

TIMOTHY FRASER
    **Plaintiff,**

    v.

MASSACHUSETTS BAY TRANSPORTATION
AUTHORITY, MBTA OFFICER JAMES DAVIE,
MBTA OFFICER BRIAN HARER, MBTA
OFFICER BELL, and MBTA OFFICER TAYLOR
    **Defendants.**

)
)
)
)
)
)
)
)
)
)
)

**RECEIVED**

JUL 1 7 2020

SUPERIOR COURT-CIVIL
MICHAEL JOSEPH DONOVAN
CLERK/MAGISTRATE

## COMPLAINT

This Complaint alleges racial discrimination, civil rights violations, and other claims resulting from the false arrest and imprisonment of the Plaintiff, an African-American male and an attorney in good standing and licensed to practice law before the Supreme Judicial Court of this Commonwealth. The MBTA Police's racial bias and discrimination, extreme prejudice, and willingness to immediately arrest, incarcerate, and charge an innocent, upstanding citizen was solely based on the color of his skin. Unbeknownst to the Defendants, the person they had falsely arrested was a member of the Massachusetts Bar.

The Defendants, through their racial bias, have willingly participated in the failure of our Justice System, as has been so prominently highlighted by similar recent incidents in the national media. The MBTA's actions demonstrate how racial discrimination and abuse of process in the justice system are used to persecute and permanently stigmatize even an innocent African-American male. As compensation for his injuries, and as a punitive measure of the Defendants' reprehensible behavior in attempting to malign the clean criminal record and upstanding reputation of a completely innocent African-American male—an attorney in fact, the Plaintiff seeks money damages and demands a jury trial.

## PARTIES

1.    The Plaintiff, Timothy Fraser, is an individual having a business address of 183 State Street, Suite 6, Boston MA, and an attorney in good standing and licensed to practice law before the Supreme Judicial Court of the Commonwealth and the U.S. federal District Court for the District of Massachusetts. As an African-American male, Attorney Fraser is a member of the protected classes enumerated in M.G.L. c. 151B.

2.    The Defendant, Massachusetts Bay Transportation Authority ("MBTA") is a body politic and the public agency responsible for operating the public transportation services in and across the Commonwealth of Massachusetts. Its business address is listed as 10 Park Plaza, Boston, MA 02116. It has the capacity to be sued under M.G.L. c 161A §2. The MBTA includes a transit police department with full police powers and which functions to police MBTA property and vehicles in each of the cities and towns

within which the MBTA operates and to protect the public and employees from harm or danger and to maintain safety and security.

3.     The Defendant, MBTA Officer James Davie was at the time of the event, which is the gravamen of this Complaint, a law enforcement officer with the Massachusetts Bay Transportation Authority, having a business address of 240 Southampton St, Boston, MA 02118. Defendant MBTA Officer Davie was acting under color of state law and in the course and scope of his employment as a law enforcement officer with the MBTA at all times material.

4.     The Defendant, MBTA Officer Brian Harer was at the time of the event, which is the gravamen of this Complaint, an officer with the Massachusetts Bay Transportation Authority, having a business address of 240 Southampton St, Boston, MA 02118. MBTA Officer Harer was acting under color of state law and in the course and scope of his employment as a law enforcement officer with the MBTA at all times material.

5.     The Defendant, MBTA Officer Bell was at the time of the event, which is the gravamen of this Complaint, an officer with the Massachusetts Bay Transportation Authority, having a business address of 240 Southampton St, Boston, MA 02118. MBTA Officer Bell was acting under color of state law and in the course and scope of his employment as a law enforcement officer with the MBTA at all times material.

6.     The Defendant, MBTA Officer Taylor was at the time of the event, which is the gravamen of this Complaint, an officer with the Massachusetts Bay Transportation Authority, having a business address of 240 Southampton St, Boston, MA 02118. MBTA Officer Taylor was acting under color of state law and in the course and scope of his employment as a law enforcement officer with the MBTA at all times material.

## JURISDICTION

7.     This Court has jurisdiction over this matter pursuant to M.G.L. c. 212, § 4 and M.G.L. c. 151B.  Venue is proper under M.G.L. c. 223, § 1 as the Defendants maintain a business address located in Suffolk County, Massachusetts, also the where the events in the Factual Allegations in this Complaint arose.

## FACTUAL ALLEGATIONS

### *The Haymarket Incident*

8.     On August 1, 2017 shortly before 6:00 p.m., Attorney Fraser left his office at his place of employment at the Seaport Boulevard, Boston offices of a large, internationally known and prominent professional services firm—the largest in the world.

9.     At approximately 6:00 p.m. at the MBTA's Haymarket transit station, Attorney Fraser was boarding MBTA Bus #604, Route 111C to Chelsea, where he resides. (*Please see* the point marked "1" on the MBTA Route 111C map, attached as Exhibit 1).

10.     Immediately prior to boarding Bus #604, Attorney Fraser encountered the complainant (referred to in the Police Report and hereinafter as "Known to Commonwealth" or "KTC") on the curb of the Haymarket bus platform.

11.     What began as a simple, common "bump" by KTC on a crowded rush-hour bus platform (i.e., KTC bumped into Attorney Fraser), quickly escalated into KTC verbally (and falsely) accusing Attorney Fraser of assault.

12.     KTC continued to escalate the situation, at which time Attorney Fraser in an attempt to diffuse the situation told the MBTA bus driver that he would disembark from bus #604 so that the bus driver could begin the 111C route on schedule.

13.     The entire altercation was recorded on the MBTA's surveillance cameras at Haymarket Station.

14.     As a witness to the entire altercation and false accusation, the MBTA bus driver agreed to pick up Attorney Fraser at the next stop, N. Washington Street at Thatcher Street, just a short walk from Haymarket. (*Please see* the point marked "2" on the MBTA Route 111C map, attached as Exhibit 1).

15.     Attorney Fraser re-boarded Bus #604 at the N. Washington Street/Thatcher Street stop at approximately 6:10 p.m.

<em><u>The False Arrest</u></em>

16.     During the ride on Bus #604 to Chelsea, Attorney Fraser offered his contact information to the MBTA bus driver in the event that any MBTA officials needed to contact him regarding the incident that had just occurred at Haymarket Station.

17.     Sometime between approximately 6:05 p.m. and 6:20 p.m., the MBTA staff at Haymarket Station made a 911 call to report the complainant KTC as a disorderly person at the Haymarket MBTA Station. (*Please see* MBTA Police Report, attached as Exhibit 2).

18.     At approximately 6:20 p.m., Defendant MBTA Officer Davie and Defendant MBTA Officer Harer responded to the MBTA's 911 emergency call, and two marked MBTA Police cruisers with sirens and flashing emergency lights intercepted and pulled over/cut-off Bus #604 on Rutherford Avenue. (*Please see* the point marked "3" on the MBTA Route 111C map, attached as Exhibit 1, and the MBTA Police Report, attached as Exhibit 2).

19.     Defendants MBTA Officer Bell and MBTA Officer Taylor arrived on the scene in a marked MBTA Police cruiser immediately afterward to assist Defendant MBTA Officer Davie and Defendant MBTA Officer Harer

20.     Upon the bus being pulled over, Attorney Fraser correctly assumed that the traffic stop was related to the incident that occurred at the Haymarket Station, and immediately disembarked Bus #604 to speak to the MBTA police. (*See* MBTA Police Report, attached as Exhibit 2).

21.     Immediately upon seeing Attorney Fraser, a young African American male, without probable cause and without speaking with him at all other than asking his name, MBTA police immediately apprehended him, patted him down without reasonable suspicion that he was armed, restrained him tightly with handcuffs, and arrested Attorney Fraser—all immediately upon his disembarking Bus #604.

22.     The entire, very brief and immediate arrest was recorded on Bus #604's video surveillance camera.

23.     The facts and sequence of the arrest is contrary to the facts as reported in the police report filed by Respondent Officer Harer, which states that "Fraser was informed he was being detained as part of an investigation." No such statement was made by Defendant Officer Harer or any of the other Defendant MBTA Officers.

24.     Attorney Fraser, a young African American male, was immediately handcuffed behind his back and arrested solely due to racial bias and discrimination on the part of Defendant MBTA Officers Harer, Davie, Bell and Taylor.

25.     Attorney Fraser demanded to be placed inside a Police cruiser in an attempt to protect his reputation from further harm from the public exposure of standing handcuffed in the middle of Rutherford Avenue, in front of two marked MBTA Transit Police cruisers with emergency lights flashing, during the busy rush hour commuter traffic, at 6:20 p.m. in broad daylight.

26.     Other than asking his name, the Defendant MBTA Police officers made no further inquiry and had no discussion with Attorney Fraser. (*Please see* Exhibit 2.)

27.     The Defendant MBTA Police officers did not request a statement regarding the altercation from Attorney Fraser. (*Please see* Exhibit 2.)

28.     The Defendant MBTA Police officers did not any attempt to corroborate KTC's false story with any of several witnesses (including the MBTA bus driver). *(Please see* Exhibit 2.)

29.     The Defendant MBTA Police officers did not perform any scene investigation whatsoever. (*Please see* Exhibit 2.)

30.      Immediately upon his disembarking of Bus #604, Defendant MBTA Officer Harer read Attorney Fraser his *Miranda* rights and proceeded to bring him back to Haymarket Station.

31.     On the way to Haymarket Station, Defendants MBTA Officer Davie and MBTA Officer Harer entered Attorney Fraser's information into their mobile police computer.

32.     Attorney Fraser has no criminal record.

33.     Upon arriving at Haymarket Station, MBTA Officer Davie and MBTA Officer Harer presented Attorney Fraser to KTC while he stood outside of the back door of the marked MBTA police vehicle with emergency lights flashing, and restrained with handcuffs behind his back, all of which was captured on the MBTA's Haymarket Station video surveillance cameras.

34.     At Haymarket Station, KTC—a criminal known to the Commonwealth and the subject of the MBTA's 911 call—identified Attorney Fraser as the alleged offender and the subject of the MBTA's 911 call.

35.     Defendants MBTA Officer Davie and MBTA Officer Harer knew or should have known after interviewing KTC that she was an unreliable and incredible witness, a criminal known to the Commonwealth with currently pending assault charges against her.

36.     After KTC pointed out Attorney Fraser as the alleged offender, MBTA Officer Davie finally informed Attorney Fraser of the alleged charge he was being arrested for: indecent assault and battery, and took him to the MBTA Police Station where he was administratively processed and jailed.

37.     The Defendant MBTA Police Officers arrested Attorney Fraser solely on the basis of KTC's false report, without further inquiry or discussion with Attorney Fraser, without any attempt for corroboration by any of several witnesses—including MBTA bus driver and staff who were present at the time of the incident—and without any scene investigation whatsoever.

38.      At approximately 6:30 p.m., Defendants MBTA Officer Davie and Harer transported Attorney Fraser, still handcuffed tightly in the rear of the police cruiser, to the MBTA Police Station at 240 Southampton St, Boston, where he was administratively processed and jailed for the next several hours of the evening of August 1, 2017.

39.     During his incarceration, Attorney Fraser requested to speak with an MBTA detective or investigator. In addition to enduring the MBTA Police's rude and disrespectful treatment, Attorney Fraser was told that there was no detective or investigator on duty and that it would be hours before one was available.

40.     While taking inventory of Attorney Fraser's wallet during the incarceration at the MBTA Police Station, the Defendant MBTA Officers discovered his Board of Bar Overseers card and finally realized he was an attorney.

41.     After discovering that Attorney Fraser was a member of the Bar, the Defendant MBTA Officer Davie intentionally prepared and filed a falsified police report, incorrectly describing the order of key events.

42.     The true sequence of events that MBTA Officer Davie attempted to falsify in the report are clearly recorded on the surveillance video for Bus #604 and the MBTA's Haymarket Station video surveillance cameras.

43.     Upon posting his own bail hours later, Attorney Fraser was notified by the bail commissioner that he would be arraigned on charges of indecent assault and battery at 9:00 a.m. on the following day, August 2, 2017, at the Boston Municipal Court.

44.     Attorney Fraser was released from the MBTA holding cell and police station at approximately 9:10 p.m.

*The Arraignment and Further Injury to Plaintiff*

45.     As a member of the Bar of this Commonwealth, and an upstanding member of the Boston legal community, Attorney Fraser began using his own professional relationships at numerous state law enforcement agencies in an effort to contact MBTA investigators immediately after being released from jail on the night of August 1st and continuing through to the early morning of August 2, 2017.

46.     In addition, Attorney Fraser scrambled over the next several late-night hours to secure a criminal defense attorney who could appear at the arraignment on such short notice at 9:00 a.m. the following day.

47.     Early on the morning of August 2, 2017, a team of MBTA investigators reviewed the Haymarket Station security camera footage of the incident.

48.     After the team of MBTA investigators reviewed the Haymarket Station security camera footage, they informed Attorney Fraser that the incident did not occur as complainant KTC had stated, and they found no evidence to support the filing of a criminal complaint against him and declined to file a criminal complaint in the matter.

49.     Attorney Fraser appeared for his criminal arraignment in Boston Municipal Court on the following morning August 2, 2017 at 9:00 a.m.

50.     Prior to Attorney Fraser's case being called, the MBTA investigators notified the Suffolk County District Attorney's office that the MBTA was declining to file a criminal complaint in the matter.

51.     However, the Suffolk County District Attorney's office refused to withdraw the criminal complaint drafted by the MBTA officers.

52.     Instead, the District Attorney's office informed Attorney Fraser (through his counsel) that he could plead "Not Guilty" at the arraignment and "if there is an exculpatory videotape, he can produce that at a later pre-trail hearing."

53.     A plea of "Not Guilty" would have an extremely harmful effect on Attorney Fraser's standing in and connection to the Boston legal community. Such a plea would require an appearance in Court in front of his peers to face a criminal arraignment and subsequent hearings; a pending/open case for the salacious crime of indecent assault and battery for the indefinite future; potential suspension of his license to practice law; and potentially, a criminal trial, all due to the MBTA Police's racial bias and false arrest.

54.     Attorney Fraser again used his own professional relationships at numerous state law enforcement agencies in an effort to prevent the harm that would result from a plea of "Not Guilty" when there was clear exculpatory evidence and the MBTA has declined to file a criminal complaint.

55.     Just minutes before Attorney Fraser's arraignment was called, the Suffolk County District Attorney's office received instructions to withdraw the complaint.

56.     However, Attorney Fraser's civil rights had already been violated, having been falsely accused, apprehended, handcuffed, arrested, and falsely imprisoned by the MBTA Police on August 1st, causing harm to his standing in and connection to the Boston legal community.

57.     In further damage to Attorney Fraser, he was required to make an appearance in Court on August 2nd in front of his peers, to face a criminal arraignment and potentially a pending/open case for the salacious crime of indecent assault and battery for the indefinite future; potential suspension of his license to practice law, subsequent hearings, and a trial, all due to the MBTA Police's racial bias and false arrest.

58.     The day after the arraignment, August 3, 2017, Attorney Fraser retuned to his Seaport Boulevard offices at the large internationally known and prominent professional services firm where he was employed.

59.     In accordance with firm policy Attorney Fraser informed a partner at his firm of the indecent assault and battery charge, the avoided arraignment, and the resolution of the incident.

60.     Attorney Fraser was sent home from work on personal leave for the remainder of the day, and through Monday, August 7, 2017.

61.     From the time of his release from jail, through morning of the arraignment on August 2nd and continuing through during the entire morning and afternoon of August 3, 2019, Attorney Fraser complained of numbness in both of his arms and hands.

62.     After being sent home from work on personal leave on August 3, 2017, Attorney Fraser visited the emergency room at Massachusetts General Hospital and was diagnosed by medical personnel with a pinched nerve due to compression for an extended period of time. He was prescribed 600mg of ibuprofen and was recommended to obtain a follow-up appointment with a neurologist to assess the possibility of severe, permanent nerve damage. (*See* Hospital Intake Report and Diagnoses, attached as Exhibit 3).

63.     On the morning of Tuesday, August 8, 2017, when Attorney Fraser next returned to work, he was involuntarily terminated from his employment.

\* \* \*

## COUNT I – VIOLATION OF CIVIL RIGHTS: FALSE ARREST
### (*MBTA Officer Davie; MBTA Officer Harer; MBTA Officer Bell; and MBTA Officer Taylor*)

64.     Plaintiff re-alleges and incorporates each and every fact enumerated in the preceding Paragraphs as if fully restated herein.

65.     At approximately 6:20 p.m., MBTA Officer Davie and MBTA Officer Harer responded to the 911 emergency call, and two marked MBTA Police cruisers with sirens and emergency lights intercepted and pulled over/cut-off Bus #604.

66.     MBTA Officer Bell and MBTA Officer Taylor arrived in a marked MBTA Police cruiser immediately afterward to assist MBTA Officer Davie and MBTA Officer Harer (*See* MBTA Police Report, attached as Exhibit 2).

67.     Upon the bus being pulled over, Attorney Fraser correctly assumed the traffic stop was related to the incident that occurred at the Haymarket Station, and immediately disembarked Bus #604 to speak to the MBTA police. (*See* MBTA Police Report, attached as Exhibit 2).

68.     Without probable cause and immediately upon seeing Attorney Fraser, a young African American male, instead of speaking with him at all, MBTA police immediately apprehended him, patted Attorney Fraser down without reasonable suspicion that he was armed, restrained him tightly with handcuffs, and arrested Attorney Fraser—all immediately upon his disembarking Bus #604.

69.     The entire, very brief arrest was recorded on the surveillance camera for Bus #604 and witnessed by multiple individuals including the Bus Driver, the passengers on the bus, and other passersby.

70.     The video surveillance of the arrest shows that it occurred in a manner contrary to what is reported in the police report filed by Respondent Officer Harer.

71.     The Police Report states that "Fraser was informed he was being detained as part of an investigation." However, it is clear from the video surveillance that other than asking Attorney Fraser his name, no conversation occurred between Defendant Officer Harer or any of the other Defendant MBTA Officers.

72.     Attorney Fraser, a young African American male, was immediately arrested solely due to racial bias and discrimination on the part of Defendant MBTA Officers Harer, Davie, Bell and Taylor.

73.     The Defendant MBTA Police officers made no further inquiry and had no discussion with Attorney Fraser in order to develop probable cause for arrest. (*See* Exhibit 2.)

74.     The Defendant MBTA Police officers did not request a statement regarding the altercation from Attorney Fraser in order to develop probable cause for arrest. (*See* Exhibit 2.)

75.     The Defendant MBTA Police officers did not any attempt to corroborate KTC's false story with any of several witnesses (including the MBTA bus driver) in order to develop probable cause for arrest. (*See* Exhibit 2.)

76.     The Defendant MBTA Police officers did not perform any scene investigation whatsoever in order to develop probable cause for arrest. (*See* Exhibit 2.)

77.     MBTA Officer Davie and MBTA Officer Harer read Attorney Fraser his *Miranda* rights and proceeded to bring him back to Haymarket Station.

78.     On the way to Haymarket Station, Defendants MBTA Officer Davie and MBTA Officer Harer entered Attorney Fraser's information into their mobile police computer.

79.     Attorney Fraser has no criminal record.

80.     Upon arriving at Haymarket Station, MBTA Officer Davie and MBTA Officer Harer presented Attorney Fraser to KTC while he stood outside of the back door of the marked MBTA police vehicle with emergency lights flashing, and restrained with handcuffs behind his back.

81.     At Haymarket Station, KTC—a criminal known to the Commonwealth and the subject of the MBTA's 911 call—instead identified Attorney Fraser as the alleged offender and the subject of the MBTA's 911 call.

82.     Defendants MBTA Officer Davie and MBTA Officer Harer did or should have entered KTC's information into their mobile police computer (as they did to Attorney Fraser).

83.     After KTC pointed out Attorney Fraser as the alleged offender, MBTA Officer Davie finally informed Attorney Fraser of the alleged charge he was being arrested for: indecent assault and battery, and took him to the MBTA Police Station where he was administratively processed and jailed.

84.     Attorney Fraser was arrested only on the basis of KTC's false report and the suggestive identification orchestrated by the Defendant MBTA Police Officers, and without further inquiry or discussion with Attorney Fraser, any attempt for corroboration by any of several witnesses—including MBTA staff who were present, and without any scene investigation whatsoever

85.     After a team of MBTA investigators reviewed the security footage of the incident the following day, MBTA investigators found no evidence to support the filing of a criminal complaint against Attorney Fraser, and thus declined to file a criminal complaint in the matter.

86.     MBTA Officer Davie and MBTA Officer Harer should have known by entering KTC's information into their mobile police computer (as they did to Attorney Fraser) that KTC was a criminal, known to the Commonwealth, with currently pending assault charges against her.

87.     Defendants MBTA Officer Davie and MBTA Officer Harer knew or should have known after interviewing KTC that she was an unreliable and incredible witness.

88.     MBTA Officer Davie and MBTA Officer Harer should have conducted a further scene investigation.

89.     MBTA Officer Davie and MBTA Officer Harer should have at the very least taken Attorney Fraser's statement of the incident prior to arresting him without probable cause.

90.     Instead, the Defendants MBTA Officer Davie and MBTA Officer Harer intended, and did immediately arrest and confine Attorney Fraser, without his consent, and without probable cause or other legal privilege to cause the confinement. *See* Spencer v. City of Boston, NO. 13-11528-MBB, 2015 WL 6870044 (D. Mass. 2015).

91.     Because the Defendant MBTA Officers did not take any witness statements or perform any street investigation prior to the arrest, the facts and circumstances known to them were insufficient to warrant a person of reasonable caution in believing that Attorney Fraser had committed or was committing a crime. *See* Jenkins v. Chief Justice of the District Court Department, 619 N.E.2d 324, 337 (Mass. 1993).

92.     Because the Defendant MBTA Officers did not take any witness statements or perform any street investigation prior to the arrest, they are unable to meet their burden of proving the presence of probable cause to justify the arrest. *See* Gutierrez v. Massachusetts Bay Transportation Authority, 772 N.E.2d 552, 564 (Mass. 2002).

93.     Wherefore, the Plaintiff respectfully requests that this Court:

[a]   Award money damages against the Defendants MBTA Officer Davie, MBTA Officer Harer, MBTA Officer Bell, MBTA Officer Taylor for their false arrest of the Plaintiff; and

[b]   Grant such other relief as the Court deems just and reasonable.

**COUNT II – VIOLATION OF CIVIL RIGHTS: FALSE IMPRISONMENT**
*(MBTA; MBTA Officer Davie; MBTA Officer Harer; MBTA Officer Bell; and MBTA Officer Taylor)*

94.     Plaintiff re-alleges and incorporates each and every fact enumerated in the preceding Paragraphs as if fully restated herein.

95.     At approximately 6:20 p.m., MBTA Officer Davie and MBTA Officer Harer responded to the 911 emergency call, and two marked MBTA Police cruisers with emergency lights intercepted and pulled over/cut-off Bus #604.

96.     MBTA Officer Bell and MBTA Officer Taylor arrived on the scene immediately afterward to assist MBTA Officer Davie and MBTA Officer Harer (*See* MBTA Police Report, attached as Exhibit 2).

97.     Upon the bus being pulled over, Attorney Fraser correctly assumed the traffic stop was related to the incident that occurred at the Haymarket Station, and immediately disembarked Bus #604 to speak to the MBTA police. (*See* MBTA Police Report, attached as Exhibit 2).

98.     Without probable cause and immediately upon seeing Attorney Fraser, a young African American male, instead of speaking with him at all, MBTA police immediately apprehended him, patted Attorney Fraser down without reasonable suspicion that he was armed, restrained him tightly with handcuffs, and arrested Attorney Fraser—all immediately upon his disembarking Bus #604.

99.     The entire, very brief arrest was recorded on the surveillance camera for Bus #604 and witnessed by multiple individuals including the Bus Driver, the passengers on the bus, and other passersby.

100.     The video surveillance of the arrest shows that it occurred in a manner contrary to what is reported in the police report filed by Respondent Officer Harer.

101.     The Police Report states that "Fraser was informed he was being detained as part of an investigation." However, it is clear from the video surveillance that other than asking Attorney Fraser his name, no conversation occurred between Defendant Officer Harer or any of the other Defendant MBTA Officers.

102.     Attorney Fraser, a young African American male, was immediately arrested solely due to racial bias and discrimination on the part of Defendant MBTA Officers Harer, Davie, Bell and Taylor.

103.     The Defendant MBTA Police officers made no further inquiry and had no discussion with Attorney Fraser in order to develop probable cause for arrest. (*See* Exhibit 2.)

104.     The Defendant MBTA Police officers did not request a statement regarding the altercation from Attorney Fraser in order to develop probable cause for arrest. (*See* Exhibit 2.)

105.     The Defendant MBTA Police officers did not any attempt to corroborate KTC's false story with any of several witnesses (including the MBTA bus driver) in order to develop probable cause for arrest. (*See* Exhibit 2.)

106.     The Defendant MBTA Police officers did not perform any scene investigation whatsoever in order to develop probable cause for arrest. (*See* Exhibit 2.)

107.     MBTA Officer Davie and MBTA Officer Harer read Attorney Fraser his *Miranda* rights and proceeded to bring him back to Haymarket Station.

108.     On the way to Haymarket Station, Defendants MBTA Officer Davie and MBTA Officer Harer entered Attorney Fraser's information into their mobile police computer.

109.     Attorney Fraser has no criminal record.

110.     Upon arriving at Haymarket Station, MBTA Officer Davie and MBTA Officer Harer presented Attorney Fraser to KTC while he stood outside of the back door of the marked MBTA police vehicle with emergency lights flashing, and restrained with handcuffs behind his back.

111.     At Haymarket Station, KTC—a criminal known to the Commonwealth and the subject of the MBTA's 911 call—instead identified Attorney Fraser as the alleged offender and the subject of the MBTA's 911 call.

112.     Defendants MBTA Officer Davie and MBTA Officer Harer did or should have entered KTC's information into their mobile police computer (as they did to Attorney Fraser).

113.     After KTC pointed out Attorney Fraser as the alleged offender, MBTA Officer Davie finally informed Attorney Fraser of the alleged charge he was being arrested for: indecent assault and battery, and took him to the MBTA Police Station where he was administratively processed and jailed.

114.     Attorney Fraser was arrested only on the basis of KTC's false report and the suggestive identification orchestrated by the Defendant MBTA Police Officers, and without further inquiry or discussion with Attorney Fraser, any attempt for corroboration by any of several witnesses—including MBTA staff who were present, and without any scene investigation whatsoever

115.     After a team of MBTA investigators reviewed the security footage of the incident the following day, MBTA investigators found that the altercation did not occur as reported in KTC's statement, and that there was no evidence to support the filing of a criminal complaint against Attorney Fraser.

116.     The MBTA thus declined to file a criminal complaint in the matter.

117.     Defendants MBTA Officer Davie and MBTA Officer Harer knew or should have known after interviewing KTC that she was an unreliable and incredible witness, known to the Commonwealth with currently pending assault charges against her.

118.     MBTA Officer Davie and MBTA Officer Harer should have conducted a further scene investigation.

119.     MBTA Officer Davie and MBTA Officer Harer should have at the very least taken Attorney Fraser's statement of the incident prior to arresting him without probable cause.

120.     Because the Defendant MBTA Officers did not take any witness statements or perform any street investigation prior to the arrest and instead relied on the word of a known criminal, they are unable to meet their burden of proving the presence of probable cause to justify the arrest. *See* Gutierrez v. Massachusetts Bay Transportation Authority, 772 N.E.2d 552, 564 (Mass. 2002).

121.     Because the Defendant MBTA Officers did not take any witness statements or perform any street investigation prior to the arrest and instead relied on the word of a known criminal, they were not acting upon any apparently trustworthy information, and could not reasonably conclude that Attorney Fraser had committed a crime." *See* Morelli v. Webster, 552 F.3d 12, 21 (1st Cir. 2009).

122.     Instead, the Defendants intentionally and unjustifiably arrested, imprisoned, and confined Attorney Fraser, first in handcuffs in the police vehicle and then continuing for several hours in a holding cell at the MBTA Police Station, and Attorney Fraser was harmed by such confinement. *See* Titus v. Town of Nantucket, 840 F.Supp.2d 404 (D. Mass. 2011).

123.     The Defendants had no legal justification to confine Attorney Fraser. *See* Rose v. Town of Concord, 971 F.Supp. 47, 51 (D. Mass. 1997).

124.     Wherefore, the Plaintiff respectfully requests that this Court:

[a]  Find that the false imprisonment of Attorney Fraser was illegal, and award money damages against the Defendants MBTA Officer Davie, MBTA Officer Harer, Officer Bell, and Officer Taylor for their subsequent false imprisonment of the Plaintiff; and

[b]  Grant such other relief as the Court deems just and reasonable.


## COUNT III – ASSAULT AND BATTERY; PERSONAL INJURY
### (MBTA Officer Davie; MBTA Officer Harer; MBTA Officer Bell; and MBTA Officer Taylor)

125.     Plaintiff re-alleges and incorporates each and every fact enumerated in the preceding Paragraphs as if fully restated herein.

126.     At approximately 6:20 p.m., MBTA Officer Davie and MBTA Officer Harer responded to the 911 emergency call, and two marked MBTA Police cruisers with sirens and emergency lights intercepted and pulled over/cut-off Bus #604.

127.     MBTA Officer Bell and MBTA Officer Taylor arrived on the scene in a marked MBTA Police cruiser immediately afterward to assist MBTA Officer Davie and MBTA Officer Harer (*See* MBTA Police Report, attached as Exhibit 2).

128.     Upon the bus being pulled over, Attorney Fraser correctly assumed the traffic stop was related to the incident that occurred at the Haymarket Station, and immediately disembarked Bus #604 to speak to the MBTA police. (*See* MBTA Police Report, attached as Exhibit 2).

129.     Without probable cause and immediately upon seeing Attorney Fraser, a young African American male, instead of speaking with him at all, MBTA police immediately apprehended him, patted Attorney Fraser down without reasonable suspicion that he was armed, restrained him tightly with handcuffs, and arrested Attorney Fraser—all immediately upon his disembarking Bus #604.

130.     The entire, very brief arrest was recorded on the surveillance camera for Bus #604 and witnessed by multiple individuals including the Bus Driver, the passengers on the bus, and other passersby.

131.     By placing Attorney Fraser under arrest without probable cause and without investigation, patting him down without suspicion of him carrying a weapon, and restraining him with handcuffs, the Defendants MBTA Officer Davie, MBTA Officer Harer, MBTA Officer Bell, and MBTA Officer Taylor caused an unjustified, harmful and offensive contact with Attorney Fraser.

132.     Attorney Fraser remained tightly handcuffed in the police cruiser with his hands behind his back for an extended period of almost an hour: from the time he disembarked from Bus #604; during the time that the Defendants MBTA Officer Davie and MBTA Officer Harer took the statement from KTC; during the time that the Defendants MBTA Officer Davie and MBTA Officer Harer orchestrated the suggestive identification of Attorney Fraser by KTC; and throughout the ride to the MBTA Police Station in South Boston.

133.     As a result of the handcuffs being placed on too tightly and behind his back for an extended period of time, beginning on the following day Attorney Fraser complained of numbness in both of his arms and hands.

134.     On August 3, 2017, Attorney Fraser visited the emergency room at Massachusetts General Hospital and was diagnosed by medical personnel with a pinched nerve due to compression for an extended period of time, was prescribed 600mg of ibuprofen, and was recommended to obtain a follow-up appointment with a neurologist to assess the possibility of severe, permanent nerve damage. (*See* Hospital Intake Report and Diagnoses, attached as Exhibit 3).

135.     Wherefore, the Plaintiff respectfully requests that this Court:

    [a]  Award money damages against the Defendants MBTA Officer Davie, MBTA Officer Harer, Officer Bell, and Officer Taylor for their assault and battery of Attorney Fraser which caused him personal injury; and

    [b]  Award medical costs and fees against the Defendants MBTA Officer Davie, MBTA Officer Harer, Officer Bell, and Officer Taylor; and

    [c]  Grant such other relief as the Court deems just and reasonable.

## COUNT IV – DISCRIMINATION
### *(MBTA Officer Davie; MBTA Officer Harer; MBTA Officer Bell; MBTA Officer Taylor; MBTA)*

136.     Plaintiff re-alleges and incorporates each and every fact enumerated in the preceding Paragraphs as if fully restated herein.

137.     On September 28, 2017, Attorney Fraser filed a complaint with the Massachusetts Commission Against Discrimination ("MCAD") charging that the Defendants MBTA Officer Davie, MBTA Officer Harer, MBTA Officer Bell and MBTA Officer Taylor and the MBTA, discriminated against him on the basis of race (African-American) when they falsely arrested and falsely imprisoned him on August 1, 2017. *See* MCAD Docket No. 17-BPA-02323.

138.     The MCAD's Issued its Dismissal and Notification of Rights on October 17, 2017.

139.    Attorney Fraser is an attorney in good standing and licensed to practice law before the Supreme Judicial Court of the Commonwealth and the U.S. federal District Court for the District of Massachusetts. As an African-American male, Attorney Fraser is a member of the protected classes enumerated in M.G.L. c. 151B.

140.    At approximately 6:20 p.m., on August 1, 2017, responded to the 911 emergency call and without probable cause and immediately upon seeing Attorney Fraser, a young African American male, instead of speaking with him Defendants MBTA Officer Davie and MBTA Officer Harer immediately apprehended him, patted him down without reasonable suspicion that he was armed, restrained him tightly with handcuffs behind his back, and arrested Attorney Fraser—all immediately upon his disembarking Bus #604.

141.    The Defendant MBTA Police officers made no further inquiry and had no discussion with Attorney Fraser in order to develop probable cause for arrest. (*See* Exhibit 2.)

142.    The Defendant MBTA Police officers did not request a statement regarding the altercation from Attorney Fraser in order to develop probable cause for arrest. (*See* Exhibit 2.)

143.    The Defendant MBTA Police officers did not any attempt to corroborate KTC's false story with any of several witnesses (including the MBTA bus driver) in order to develop probable cause for arrest. (*See* Exhibit 2.)

144.    The Defendant MBTA Police officers did not perform any scene investigation whatsoever in order to develop probable cause for arrest. (*See* Exhibit 2.)

145.    Attorney Fraser, a young African American male, was immediately placed under arrest solely on the basis the MBTA Police's racial bias and discrimination.

146.    The four (4) white MBTA Police officers immediately assumed Attorney Fraser's guilt based on the color of his skin.

147.    The entire, very brief arrest was recorded on the surveillance camera for Bus #604 and witnessed by multiple individuals including the Bus Driver, the passengers on the bus, and other passersby.

148.    MBTA Officer Davie and MBTA Officer Harer read Attorney Fraser his *Miranda* rights and proceeded to bring him back to Haymarket Station.

149.    On the way to Haymarket Station, Defendants MBTA Officer Davie and MBTA Officer Harer entered Attorney Fraser's information into their mobile police computer.

150.    Attorney Fraser has no criminal record.

151.    Upon arriving at Haymarket Station, MBTA Officer Davie and MBTA Officer Harer presented Attorney Fraser to KTC while he stood outside of the back door of the marked MBTA police vehicle with emergency lights flashing, and restrained with handcuffs behind his back.

152.    At Haymarket Station, KTC—a criminal known to the Commonwealth and the subject of the MBTA's 911 call—instead identified Attorney Fraser as the alleged offender and the subject of the MBTA's 911 call.

153.    Defendants MBTA Officer Davie and MBTA Officer Harer did or should have entered KTC's information into their mobile police computer (as they did to Attorney Fraser).

154.    Defendants MBTA Officer Davie and MBTA Officer Harer knew or should have known after interviewing KTC that she was an unreliable and incredible witness, known to the Commonwealth with currently pending assault charges against her.

155.    Solely on the basis of KTC's false report and their own racial biases, MBTA Officer Davie and MBTA Officer Harer took Attorney Fraser to the MBTA Police Station and administratively processed and jailed him.

156.    Attorney Fraser was released from the MBTA holding cell and police station at approximately 9:10 p.m.

157.    As a member of the Bar of this Commonwealth, and an upstanding member of the Boston legal community, Attorney Fraser began using his own professional relationships at numerous state law enforcement agencies in an effort to contact MBTA investigators immediately after being released from jail on the night of August 1st and continuing through to the early morning of August 2, 2017.

158.    In addition, Attorney Fraser scrambled over the next several late-night hours to secure a criminal defense attorney who could appear at the arraignment on such short notice at 9:00 a.m. the following day.

159.    Early on the morning of August 2, 2017, a team of MBTA investigators reviewed the Haymarket Station security footage of the incident.

160.    After the team of MBTA investigators reviewed the Haymarket Station security footage, they informed Attorney Fraser that the incident did not occur as complainant KTC had stated, and they found no evidence to support the filing of a criminal complaint against him and declined to file a criminal complaint in the matter.

161.    Attorney Fraser appeared for his criminal arraignment in Boston Municipal Court on the following morning August 2, 2017 at 9:00 a.m.

162.    Prior to Attorney Fraser's case being called, the MBTA investigators notified the Suffolk County District Attorney's office that the MBTA was declining to file a criminal complaint in the matter.

163.    However, the Suffolk County District Attorney's office refused to withdraw the criminal complaint drafted by the MBTA officers.

164.    Instead, the District Attorney's office informed Attorney Fraser (through counsel) that he could plead "Not Guilty" at the arraignment and "if there is an exculpatory videotape, he can produce that at a later pre-trail hearing."

165.    A plea of "Not Guilty" would have an extremely harmful effect on Attorney Fraser's standing in and connection to the Boston legal community. Such a plea would require an appearance in Court in front of his peers to face a criminal arraignment and subsequent hearings; a pending/open case for the salacious crime of indecent assault and battery for the indefinite future; potential suspension of his

license to practice law; and potentially, a criminal trial, all due to the MBTA Police's racial bias and false arrest.

166.     Attorney Fraser again used his own professional relationships at numerous state law enforcement agencies in an effort to prevent the harm that would result from a plea of "Not Guilty" when there was clear exculpatory evidence and the MBTA has declined to file a criminal complaint.

167.     Just minutes before Attorney Fraser's arraignment was called, the Suffolk County District Attorney's office received instructions to withdraw the complaint.

168.     Solely because of his standing in and connection to the Boston legal community, Attorney Fraser was able to overcome the MBTA Police's racial bias, and the continuing and extremely damaging effects of that discrimination and bias.

169.     However, Attorney Fraser's civil rights had already been violated due to the MBTA Police's racial bias, having been falsely accused, apprehended, handcuffed, arrested, and falsely imprisoned by the MBTA Police on August 1st, causing harm to his standing in and connection to the Boston legal community.

170.     In further damage to Attorney Fraser, he was required to make an appearance in Court on August 2nd in front of his peers, to face a criminal arraignment and potentially a pending/open case for the salacious crime of indecent assault and battery for the indefinite future; potential suspension of his license to practice law, subsequent hearings, and a trial, all due to the MBTA Police's racial bias and false arrest.

171.     The day after the arraignment, August 3, 2017, in accordance with firm policy Attorney Fraser informed a partner at his place of employment (a large, internationally known firm) of the indecent assault and battery charge, avoided arraignment, and the resolution of the incident.

172.     Attorney Fraser was sent home from work on personal leave for the remainder of the day, and through Monday, August 7, 2017.

173.     On the morning of Tuesday, August 8, 2017, when Attorney Fraser returned to work, he was involuntarily terminated from his employment.

174.     The MBTA Police's racial bias and discrimination and extreme prejudice resulted in their willingness to immediately arrest, incarcerate, and charge an innocent, upstanding citizen—a member of this Bar, in fact—with a crime that if guilty would have resulted in incarceration and required lifelong public registration.

175.     The MBTA's actions demonstrate how racial discrimination and abuse of process in the justice system are used to persecute, permanently stigmatize, and cause extreme economic harm to African-American males, even innocent, upstanding, members of the Bar.

176.     In this instance, the Defendant MBTA Police Officers took the word of an unsavory character—a criminal known to the Commonwealth who herself was the subject of the 911 call.

177.     Based on racial bias and through improper police procedure and without any scene investigation or inquiry whatsoever, the Defendant MBTA Police Officers immediately and upon sight apprehended Attorney Fraser, an African-American male, presumed his guilt, immediately handcuffed and

falsely arrested him—all prior to even obtaining a statement or even meeting the complainant—and then falsely imprisoned him.

178.     While taking inventory of Attorney Fraser's wallet during the incarceration at the MBTA Police Station, the Defendant MBTA Officers discovered his Board of Bar Overseers card and realized he was an attorney.

179.     After discovering that Attorney Fraser was a member of the Bar, the Defendant MBTA Officer Davie intentionally prepared and filed a falsified police report, incorrectly describing the order of key events in order to conceal the MBTA's false arrest and abuse of process.

180.     The true sequence of events that MBTA Officer Davie attempted to falsify in the report are clearly recorded on the surveillance video for Bus #604.

181.     In its enactment of M.G.L. c. 151B, the Massachusetts Legislature declared the Commonwealth's strong and emphatic public policy of eliminating invidious discrimination.

182.     The Statute expects the government and its agencies to lead by example, and the statute makes the Commonwealth, and its agencies and instrumentalities, liable for violations of Chapter 151B and thus explicitly waived sovereign immunity for Chapter 151B claims.

183.     The Defendants, through their racial bias, have failed to lead by example, and in fact through their discrimination and racial bias have willingly participated in the failure of our Justice System, as has been so prominently highlighted by similar recent incidents in the national press.

184.     Wherefore, the Plaintiff respectfully requests that this Court:

[a]  Award money damages against the Defendants MBTA Officer Davie, MBTA Officer Harer, MBTA Officer Bell, MBTA Officer Taylor and the MBTA for racial bias and discrimination which caused damage to the Plaintiff; and

[b]  Grant such other relief as the Court deems just and reasonable.

## COUNT V – VIOLATION OF CIVIL RIGHTS: ABUSE OF PROCESS
### *(MBTA Officer Davie, MBTA Officer Harer, MBTA Officer Bell and MBTA Officer Taylor)*

185.     Plaintiff re-alleges and incorporates each and every fact enumerated in the preceding Paragraphs as if fully restated herein.

186.     At approximately 6:20 p.m., MBTA Officer Davie and MBTA Officer Harer responded to the 911 emergency call, and two marked MBTA Police cruisers with sirens and emergency lights intercepted and pulled over/cut-off Bus #604.

187.     MBTA Officer Bell and MBTA Officer Taylor arrived on the scene in a marked MBTA Police cruiser immediately afterward to assist MBTA Officer Davie and MBTA Officer Harer (*See* MBTA Police Report, attached as Exhibit 2).

188.     Upon the bus being pulled over, Attorney Fraser correctly assumed the traffic stop was related to the incident that occurred at the Haymarket Station, and immediately disembarked Bus #604 to speak to the MBTA police. (*See* MBTA Police Report, attached as Exhibit 2).

189.     Without probable cause and immediately upon seeing Attorney Fraser, a young African American male, instead of speaking with him at all, MBTA police immediately apprehended him, patted Attorney Fraser down without reasonable suspicion that he was armed, restrained him tightly with handcuffs, and arrested Attorney Fraser—all immediately upon his disembarking Bus #604.

190.     The entire, very brief arrest was recorded on the surveillance camera for Bus #604 and witnessed by multiple individuals including the Bus Driver, the passengers on the bus, and other passersby.

191.     The video surveillance of the arrest shows that it occurred in a manner contrary to what is reported in the police report filed by Respondent Officer Harer.

192.     The Police Report states that "Fraser was informed he was being detained as part of an investigation." However, it is clear from the video surveillance that other than asking Attorney Fraser his name, no conversation occurred between Defendant Officer Harer or any of the other Defendant MBTA Officers.

193.     Attorney Fraser, a young African American male, was immediately arrested solely due to racial bias, discrimination, and malice on the part of Defendant MBTA Officers Harer, Davie, Bell and Taylor.

194.     The Defendant MBTA Police officers made no further inquiry and had no discussion with Attorney Fraser. (*See* Exhibit 2.)

195.     The Defendant MBTA Police officers did not request a statement regarding the altercation from Attorney Fraser. (*See* Exhibit 2.)

196.     The Defendant MBTA Police officers did not any attempt to corroborate KTC's false story with any of several witnesses (including the MBTA bus driver). (*See* Exhibit 2.)

197.     The Defendant MBTA Police officers did not perform any scene investigation whatsoever. (*Please see* MBTA Police Report, attached as Exhibit 2). (*See* Exhibit 2.)

198.      Upon his disembarking of Bus #604, Defendant MBTA Officer Harer read Attorney Fraser his *Miranda* rights and proceeded to bring him back to Haymarket Station.

199.     On the way to Haymarket Station, Defendants MBTA Officer Davie and MBTA Officer Harer entered Attorney Fraser's information into their mobile police computer.

200.     Attorney Fraser has no criminal record.

201.     Upon arriving at Haymarket Station, MBTA Officer Davie and MBTA Officer Harer presented Attorney Fraser to KTC while he stood outside of the back door of the marked MBTA police vehicle with emergency lights flashing, and restrained with handcuffs behind his back.

202.     Solely on the basis of KTC's false report and the suggestive identification they orchestrated, as well as and their own racial biases, discrimination, and malice, Defendants MBTA Officer Davie and MBTA Officer Harer took Attorney Fraser to the MBTA Police Station and administratively processed and jailed him.

203.     The Defendant MBTA Officers' malicious arrest of Attorney Fraser resulted in the institution of criminal process against him with malice, and without probable cause. *See* Gutierrez v. Massachusetts Bay Transp. Authority, 437 Mass. 396, 405;  772 N.E.2d 552, 561 (2002).

204.     The Defendant MBTA Officers each performed improper police procedure and abused criminal process resulting in the violation of Attorney Fraser's civil rights and resulting in damage to Attorney Fraser.

205.     The criminal process instituted against Attorney Fraser was ultimately terminated in his favor. *See* Gutierrez v. Massachusetts Bay Transp. Authority, 437 Mass. 396, 405;  772 N.E.2d 552, 561 (2002).

206.     Wherefore, the Plaintiff respectfully requests that this Court:

[a] Award money damages against the Defendant MBTA Officers for their abuse of process which caused damage to the Plaintiff; and

[b] Grant such other relief as the Court deems just and reasonable.

## COUNT VI – MALICIOUS PROSECUTION
### *(MBTA Officer Davie, MBTA Officer Harer, MBTA Officer Bell, and MBTA Officer Taylor)*

207.     Plaintiff re-alleges and incorporates each and every fact enumerated in the preceding Paragraphs as if fully restated herein.

208.     At approximately 6:20 p.m., MBTA Officer Davie and MBTA Officer Harer responded to the 911 emergency call, and two marked MBTA Police cruisers with emergency lights intercepted and pulled over/cut-off Bus #604.

209.     MBTA Officer Bell and MBTA Officer Taylor arrived on the scene immediately afterward to assist MBTA Officer Davie and MBTA Officer Harer (*See* MBTA Police Report, attached as Exhibit 2).

210.     Upon the bus being pulled over, Attorney Fraser correctly assumed the traffic stop was related to the incident that occurred at the Haymarket Station, and immediately disembarked Bus #604 to speak to the MBTA police. (*See* MBTA Police Report, attached as Exhibit 2).

211.     Without probable cause and immediately upon seeing Attorney Fraser, a young African American male, instead of speaking with him at all, MBTA police immediately apprehended him, patted Attorney Fraser down without reasonable suspicion that he was armed, restrained him tightly with handcuffs, and arrested Attorney Fraser—all immediately upon his disembarking Bus #604.

212.     The entire, very brief arrest was recorded on the surveillance camera for Bus #604 and witnessed by multiple individuals including the Bus Driver, the passengers on the bus, and other passersby.

213.    The video surveillance of the arrest shows that it occurred in a manner contrary to what is reported in the police report filed by Respondent Officer Harer.

214.    The Police Report states that "Fraser was informed he was being detained as part of an investigation." However, it is clear from the video surveillance that other than asking Attorney Fraser his name, no conversation occurred between Defendant Officer Harer or any of the other Defendant MBTA Officers.

215.    Attorney Fraser, a young African American male, was immediately arrested solely due to racial bias, discrimination, and malice on the part of Defendant MBTA Officers Harer, Davie, Bell and Taylor.

216.    The Defendant MBTA Police officers made no further inquiry and had no discussion with Attorney Fraser. (*See* Exhibit 2.)

217.    The Defendant MBTA Police officers did not request a statement regarding the altercation from Attorney Fraser. (*See* Exhibit 2.)

218.    The Defendant MBTA Police officers did not any attempt to corroborate KTC's false story with any of several witnesses (including the MBTA bus driver). (*See* Exhibit 2.)

219.    The Defendant MBTA Police officers did not perform any scene investigation whatsoever. (*See* Exhibit 2.)

220.     Upon his disembarking of Bus #604, Defendant MBTA Officer Harer read Attorney Fraser his *Miranda* rights and proceeded to bring him back to Haymarket Station.

221.    On the way to Haymarket Station, Defendants MBTA Officer Davie and MBTA Officer Harer entered Attorney Fraser's information into their mobile police computer.

222.    Attorney Fraser has no criminal record.

223.    Upon arriving at Haymarket Station, MBTA Officer Davie and MBTA Officer Harer presented Attorney Fraser to KTC while he stood outside of the back door of the marked MBTA police vehicle with emergency lights flashing, and restrained with handcuffs behind his back.

224.    Solely on the basis of KTC's false report and their own racial biases, discrimination, and malice, Defendants MBTA Officer Davie and MBTA Officer Harer took Attorney Fraser to the MBTA Police Station and administratively processed and jailed him.

225.    MBTA Officer Davie and MBTA Officer Harer intentionally did not any attempt to corroborate KTC's false story with any of several witnesses (including the MBTA bus driver).

226.     MBTA Officer Davie and MBTA Officer Harer intentionally refrained from conducting a further scene investigation prior to arresting Attorney Fraser without probable cause.

227.    Instead, solely on the basis of KTC's false report and the suggestive identification they orchestrated, as well as and their own racial biases, discrimination, and malice, Defendants MBTA Officer

Davie and MBTA Officer Harer took Attorney Fraser to the MBTA Police Station and administratively processed and jailed him.

228.    Defendants MBTA Officer Davie and MBTA Officer Harer's arrest of Attorney Fraser resulted in the commencement of a criminal process against him. *See* Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001).

229.    Because the Defendant MBTA Officers did not take any witness statements or perform any street investigation prior to the arrest, they are unable to meet their burden of proving the presence of probable cause to justify the arrest. *See* Gutierrez v. Massachusetts Bay Transportation Authority, 772 N.E.2d 552, 564 (Mass. 2002).

230.    Defendants MBTA Officer Davie and MBTA Officer Harer's arrest of Attorney Fraser was malicious in that it was based solely their own racial biases and discrimination, and was instituted without probable cause. *See* Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001).

231.    The criminal process instituted against Attorney Fraser was ultimately terminated in his favor. *See* Id.

232.    Wherefore, the Plaintiff respectfully requests that this Court:

[a]    Award money damages against the Defendant MBTA Officers for malicious prosecution due to their institution of a criminal process against Attorney Fraser, with malice and without probable cause, which criminal process was later terminated in favor of Attorney Fraser; and

[b]    Grant such other relief as the Court deems just and reasonable.

## COUNT VII – NEGLIGENT SUPERVISION AND TRAINING
### (MBTA)

233.    Plaintiff re-alleges and incorporates each and every fact enumerated in the preceding Paragraphs as if fully restated herein.

234.    At approximately 6:20 p.m., MBTA Officer Davie and MBTA Officer Harer responded to the 911 emergency call, and two marked MBTA Police cruisers with sirens and emergency lights intercepted and pulled over/cut-off Bus #604.

235.    MBTA Officer Bell and MBTA Officer Taylor arrived on the scene in a marked MBTA Police cruiser immediately afterward to assist MBTA Officer Davie and MBTA Officer Harer (*See* MBTA Police Report, attached as Exhibit 2).

236.    Upon the bus being pulled over, Attorney Fraser correctly assumed the traffic stop was related to the incident that occurred at the Haymarket Station, and immediately disembarked Bus #604 to speak to the MBTA police. (*See* MBTA Police Report, attached as Exhibit 2).

237.    Without probable cause and immediately upon seeing Attorney Fraser, a young African American male, instead of speaking with him at all, MBTA police immediately apprehended him, patted

Attorney Fraser down without reasonable suspicion that he was armed, restrained him tightly with handcuffs, and arrested Attorney Fraser—all immediately upon his disembarking Bus #604.

238.     The entire, very brief arrest was recorded on the surveillance camera for Bus #604 and witnessed by multiple individuals including the Bus Driver, the passengers on the bus, and other passersby.

239.     The video surveillance of the arrest shows that it occurred in a manner contrary to what is reported in the police report filed by Respondent Officer Harer.

240.     The Police Report states that "Fraser was informed he was being detained as part of an investigation." However, it is clear from the video surveillance that other than Attorney Fraser stating his name, no conversation occurred between Defendant Officer Harer or any of the other Defendant MBTA Officers.

241.     Attorney Fraser, a young African American male, was immediately arrested solely due to racial bias, discrimination, and malice on the part of Defendant MBTA Officers Harer, Davie, Bell and Taylor.

242.     The Defendant MBTA Police officers made no further inquiry and had no discussion with Attorney Fraser. (*See* Exhibit 2.)

243.     The Defendant MBTA Police officers did not request a statement regarding the altercation from Attorney Fraser. (*See* Exhibit 2.)

244.     The Defendant MBTA Police officers did not any attempt to corroborate KTC's false story with any of several witnesses (including the MBTA bus driver). (*See* Exhibit 2.)

245.     The Defendant MBTA Police officers did not perform any scene investigation whatsoever. (*See* Exhibit 2.)

246.      Upon his disembarking of Bus #604, Defendant MBTA Officer Harer read Attorney Fraser his *Miranda* rights and proceeded to bring him back to Haymarket Station.

247.     On the way to Haymarket Station, Defendants MBTA Officer Davie and MBTA Officer Harer entered Attorney Fraser's information into their mobile police computer.

248.     Attorney Fraser has no criminal record.

249.     Upon arriving at Haymarket Station, Defendants MBTA Officer Davie and MBTA Officer Harer presented Attorney Fraser to KTC while he stood outside of the back door of the marked MBTA police vehicle with emergency lights flashing, and restrained with handcuffs behind his back.

250.     During the identification, the Defendants MBTA Officer Davie and MBTA Officer Harer made no attempts to hide that Attorney Fraser was under arrest. *See* Commonwealth v. Barnett, 371 Mass. at 87, 93; 354 N.E.2d 879, 884 (1976).

251.    At Haymarket Station, KTC—a criminal known to the Commonwealth and the subject of the MBTA's 911 call—instead identified Attorney Fraser as the alleged offender and the subject of the MBTA's 911 call.

252.    Defendants MBTA Officer Davie's and MBTA Officer Harer's presentation of Attorney Fraser to KTC while he stood outside of the back door of the marked MBTA police vehicle with emergency lights flashing, and restrained with handcuffs behind his back was an illegal suggestive identification that deprived Attorney Fraser of his right to due process. *See* Commonwealth v. Johnson, 473 Mass. 594 (2016).

253.    Defendants MBTA Officer Davie and MBTA Officer Harer did or should have entered KTC's information into their mobile police computer (as they did to Attorney Fraser).

254.    Defendants MBTA Officer Davie and MBTA Officer Harer knew or should have known after interviewing KTC that she was an unreliable and incredible witness, known to the Commonwealth with currently pending assault charges against her.

255.    Solely on the basis of KTC's false report, they illegal suggestive identification they orchestrated, and their own racial biases, MBTA Officer Davie and MBTA Officer Harer took Attorney Fraser to the MBTA Police Station and administratively processed and jailed him.

256.    Upon returning to the MBTA Police Station to complete the administrative process and jailing of Attorney Fraser and taking inventory of his wallet, the MBTA Booking Officer Jon Erickson finally realized that the person his colleagues had so quickly and illegally arrested was an attorney licensed to practice before the Supreme Judicial Court of the Commonwealth.

257.    After learning that Attorney Fraser was a practicing lawyer, Defendant MBTA Officer Davie attempted to protect himself, as well as MBTA Officer Harer, MBTA Officer Bell and MBTA Officer Taylor from the legal ramifications of their improper police procedure and false arrest of Attorney Fraser.

258.    Defendant MBTA Officer Davie changed the order of events in the Police Report, falsely writing that "Fraser was informed he was being detained as part of an investigation." (*Please see* MBTA Police Report, attached as Exhibit 2).

259.    However, the video surveillance camera for Bus #604 shows that contrary to the facts as written in Officer Davie's Police Report, no such conversation occurred.

260.    Video surveillance camera for Bus #604 clearly shows that without probable cause and immediately upon seeing Attorney Fraser, a young African American male, MBTA police immediately apprehended him, patted Attorney Fraser down without reasonable suspicion that he was armed, restrained him tightly with handcuffs behind his back, and arrested him at the time of the bus traffic stop without any discussion.

261.    Further, Defendant Officer Davie's police report states that Attorney "Fraser asked if he could be placed in the cruiser. Fraser was placed in handcuffs and placed in the marked cruiser." (*See* Exhibit 2.)

262.    However, the video surveillance camera for Bus #604 clearly shows that Attorney Fraser was immediately placed in handcuffs upon disembarking Bus #604 to speak to MBTA Police, and was already in handcuffs when he asked to be placed in the cruiser in order to be concealed from onlookers.

263.     Attorney Fraser only demanded to be placed inside the cruiser in an attempt to protect his reputation from further harm from the public exposure of standing handcuffed in the middle of Rutherford Avenue, in front of two marked MBTA Transit Police cruisers with emergency lights flashing, during the busy rush hour commuter traffic, at 6:20 p.m. in broad daylight.

264.     By filing a police report with a false narrative of the events that occurred, MBTA Officer Davie violated Attorney Fraser's due process by fabricating evidence against an innocent citizen and placing that evidence in a police report. *See* Limone v. Condon, 372 F.3d 39, 44–45 (1st Cir.2004).

265.     By filing a police report with a false narrative of the events that occurred, MBTA Officer Davie has committed official misconduct, which official misconduct caused harm to Attorney Fraser.

266.     The Defendants MBTA Officer Davie, MBTA Officer Harer, MBTA Officer Bell, and MBTA Officer Taylor were each agents and/or employees of the Defendant MBTA, and each officer came into contact with Attorney Fraser during the course of MBTA business. *See* Limone v. U.S., 497 F.Supp.2d 143, 233 (2007).

267.     Defendant MBTA hired each of the Defendant Police Officers and had a duty of care to adequately train, supervise and discipline them in order to protect members of the public, including Attorney Fraser, from being harmed by the police unnecessarily.

268.     The MBTA failed to use reasonable care in the selection, supervision and retention of the Defendant MBTA officers, and that the failure to use such reasonable care was the proximate cause of harm to Attorney Fraser. *See* Limone v. U.S., 497 F.Supp.2d 143, 233 (2007).

269.     Due to negligent supervision and improper training by the MBTA, the Defendant MBTA Officers each performed improper police procedure and abused criminal process resulting in the violation of Attorney Fraser's civil rights and resulting in damage to Attorney Fraser.

270.     Neither MBTA Officer Davie, nor MBTA Officer Harer, nor MBTA Officer Bell, nor MBTA Officer Taylor were adequately trained or supervised by the MBTA enough to know that:

[a]   their immediate arrest of Attorney Fraser solely on the basis of the MBTA's 911 regarding a disorderly KTC was improper police procedure;

[b]   their failure to enter KTC into the mobile police computer to determine that she was an unreliable and incredible witness, known to the Commonwealth with currently pending assault charges against her was improper police procedure;

[c]   their presentation of Attorney Fraser to KTC while he stood outside of the back door of the marked MBTA police vehicle with emergency lights flashing, and restrained with handcuffs behind his back was an illegal suggestive identification and improper police procedure;

[d]   their failure to make any inquiry of, request a statement from, or have any discussion at all with Attorney Fraser prior to arresting him was improper police procedure;

[e]   their failure to make any attempt to corroborate KTC's false story with any of several witnesses including the MBTA bus driver and MBTA Haymarket Station personnel prior to arresting Attorney Fraser was improper police procedure; and

[f]   their failure to make or perform any scene investigation whatsoever prior to arresting Attorney Fraser was improper police procedure.

271.     On October 4, 2017, Attorney Fraser presented the potential tort claim to the MBTA by delivering a copy of [a] the MCAD Complaint, [b] a draft copy of this civil Complaint, and [c] a "Request for Preservation of Video Surveillance & Recordings," upon the MBTA's General Counsel at its business address of 10 Park Plaza, Boston, MA 02116.

272.     The Defendant MBTA is liable under the Massachusetts Tort Claims Act (MTCA) for its negligence in failing to train and supervise the Defendant MBTA Officers. *See* Titus v. Town of Nantucket, 840 F.Supp.2d 404, 411 (D. Mass. 2011); Mass. Gen. Laws ch. 258.

273.     Wherefore, the Plaintiff respectfully requests that this Court:

[a]   Award money damages against the Defendant MBTA for its failure to adequately train and supervise its policer officer employees MBTA Officer Davie, MBTA Officer Harer, MBTA Officer Bell, and MBTA Officer Taylor, which resulted in injury to the Plaintiff; and

[b]   Grant such other relief as the Court deems just and reasonable.

### COUNT VIII – OFFICIAL MISCONDUCT & DUE PROCESS VIOLATIONS; FALSIFYING A POLICE REPORT
*(MBTA Officer Davie)*

274.     Plaintiff re-alleges and incorporates each and every fact enumerated in the preceding Paragraphs as if fully restated herein.

275.     At approximately 6:20 p.m., MBTA Officer Davie and MBTA Officer Harer responded to the 911 emergency call, and two marked MBTA Police cruisers with sirens and emergency lights intercepted and pulled over/cut-off Bus #604.

276.     MBTA Officer Bell and MBTA Officer Taylor arrived on the scene in a marked MBTA Police cruiser immediately afterward to assist MBTA Officer Davie and MBTA Officer Harer (*See* MBTA Police Report, attached as Exhibit 2).

277.     Upon the bus being pulled over, Attorney Fraser correctly assumed the traffic stop was related to the incident that occurred at the Haymarket Station, and immediately disembarked Bus #604 to speak to the MBTA police. (*See* MBTA Police Report, attached as Exhibit 2).

278.     Without probable cause and immediately upon seeing Attorney Fraser, a young African American male, instead of speaking with him at all, MBTA police immediately apprehended him, patted Attorney Fraser down without reasonable suspicion that he was armed, restrained him tightly with handcuffs, and arrested Attorney Fraser—all immediately upon his disembarking Bus #604.

279.     The entire, very brief arrest was recorded on the surveillance camera for Bus #604 and witnessed by multiple individuals including the Bus Driver, the passengers on the bus, and other passersby.

280.     Attorney Fraser, a young African American male, was immediately arrested solely due to racial bias, discrimination, and malice on the part of Defendant MBTA Officers Harer, Davie, Bell and Taylor.

281.     The Defendant MBTA Police officers made no further inquiry and had no discussion with Attorney Fraser; did not request a statement regarding the altercation from Attorney Fraser; did not any attempt to corroborate KTC's false story with any of several witnesses (including the MBTA bus driver or Haymarket Station personnel); and did not perform any scene investigation whatsoever. (*Please see* MBTA Police Report, attached as Exhibit 2).

282.     Upon his disembarking of Bus #604, Defendant MBTA Officer Harer read Attorney Fraser his *Miranda* rights and proceeded to bring him back to Haymarket Station.

283.     On the way to Haymarket Station, Defendants MBTA Officer Davie and MBTA Officer Harer entered Attorney Fraser's information into their mobile police computer.

284.     Attorney Fraser has no criminal record.

285.     Upon arriving at Haymarket Station, Defendants MBTA Officer Davie and MBTA Officer Harer presented Attorney Fraser to KTC while he stood outside of the back door of the marked MBTA police vehicle with emergency lights flashing, and restrained with handcuffs behind his back.

286.     Defendants MBTA Officer Davie and MBTA Officer Harer made no attempts to hide that Attorney Fraser was under arrest. *See* Commonwealth v. Barnett, 371 Mass. at 87, 93; 354 N.E.2d 879, 884 (1976).

287.     At Haymarket Station, KTC—a criminal known to the Commonwealth and the subject of the MBTA's 911 call—instead identified Attorney Fraser as the alleged offender and the subject of the MBTA's 911 call.

288.     Defendants MBTA Officer Davie's and MBTA Officer Harer's presentation of Attorney Fraser to KTC while he stood outside of the back door of the marked MBTA police vehicle with emergency lights flashing, and restrained with handcuffs behind his back was an illegal suggestive identification that deprived Attorney Fraser of his right to due process. *See* Commonwealth v. Johnson, 473 Mass. 594 (2016).

289.     Solely on the basis of KTC's false report and the suggestive identification they coordinated, as well as and their own racial biases, discrimination, and malice, Defendants MBTA Officer Davie and MBTA Officer Harer took Attorney Fraser to the MBTA Police Station and administratively processed and jailed him.

290.     Upon returning to the MBTA Police Station to complete the administrative process and jailing of Attorney Fraser and taking inventory of his wallet, the MBTA Booking Officer Jon Erickson finally realized that the person his colleagues had so quickly and illegally arrested was an attorney licensed to practice before the Supreme Judicial Court of the Commonwealth.

291.     After learning that Attorney Fraser was a practicing lawyer, Defendant MBTA Officer Davie attempted to protect himself, as well as MBTA Officer Harer, MBTA Officer Bell and MBTA Officer Taylor from the legal ramifications of their improper police procedure and false arrest of Attorney Fraser.

292.     Defendant MBTA Officer Davie changed the order of events in the Police Report, falsely writing that "Fraser was informed he was being detained as part of an investigation." (*Please see* MBTA Police Report, attached as Exhibit 2).

293.     However, the video surveillance camera for Bus #604 shows that contrary to the facts as written in Officer Davie's Police Report, no such conversation occurred.

294.     Video surveillance camera for Bus #604 clearly shows that without probable cause and immediately upon seeing Attorney Fraser, a young African American male, MBTA police immediately apprehended him, patted Attorney Fraser down without reasonable suspicion that he was armed, restrained him tightly with handcuffs behind his back, and arrested him at the time of the bus traffic stop without any discussion.

295.     Further, Defendant Officer Davie's police report states that Attorney "Fraser asked if he could be placed in the cruiser. Fraser was placed in handcuffs and placed in the marked cruiser." (*See* Exhibit 2.)

296.     However, the video surveillance camera for Bus #604 clearly shows that Attorney Fraser was immediately placed in handcuffs upon disembarking Bus #604 to speak to MBTA Police, and was already in handcuffs when he asked to be placed in the cruiser in order to be concealed from onlookers.

297.     Attorney Fraser only demanded to be placed inside the cruiser in an attempt to protect his reputation from further harm from the public exposure of standing handcuffed in the middle of Rutherford Avenue, in front of two marked MBTA Transit Police cruisers with emergency lights flashing, during the busy rush hour commuter traffic, at 6:20 p.m. in broad daylight.

298.     By filing a police report with a false narrative of the events that occurred, MBTA Officer Davie violated Attorney Fraser's due process by fabricating evidence against an innocent citizen and placing that evidence in a police report. *See* Limone v. Condon, 372 F.3d 39, 44–45 (1st Cir.2004).

299.     By filing a police report with a false narrative of the events that occurred, MBTA Officer Davie has committed official misconduct, which official misconduct caused harm to Attorney Fraser.

300.     Wherefore, the Plaintiff respectfully requests that this Court:

[a]  Award money damages against the Defendant MBTA Officer Davie for his intentional official misconduct, which official misconduct resulted in injury to the Plaintiff; and

[b]  Grant such other relief as the Court deems just and reasonable.

## COUNT IX – DEFAMATION OF CHARACTER (LIBEL)
### *(MBTA Officer Davie)*

301.     Plaintiff re-alleges and incorporates each and every fact enumerated in the preceding Paragraphs as if fully restated herein.

302.     At approximately 6:20 p.m., MBTA Officer Davie and MBTA Officer Harer responded to the 911 emergency call, and two marked MBTA Police cruisers with sirens and emergency lights intercepted and pulled over/cut-off Bus #604.

303.     MBTA Officer Bell and MBTA Officer Taylor arrived on the scene in a marked MBTA Police cruiser immediately afterward to assist MBTA Officer Davie and MBTA Officer Harer (*See* MBTA Police Report, attached as Exhibit 2).

304.     Without probable cause and immediately upon seeing Attorney Fraser, a young African American male, instead of speaking with him at all, MBTA police immediately apprehended him, patted Attorney Fraser down without reasonable suspicion that he was armed, restrained him tightly with handcuffs, and arrested Attorney Fraser—all immediately upon his disembarking Bus #604.

305.     Defendants MBTA Officer Davie, MBTA Officer Harer, MBTA Officer Bell and MBTA Officer Taylor Further, immediately damaged Attorney Fraser's reputation by forcing him to stand outside in front of two marked MBTA Transit Police cruisers, during the busy rush hour commuter traffic, at 6:20 p.m. in broad daylight, handcuffed.

306.     The entire arrest was recorded on the surveillance camera for Bus #604 and witnessed by multiple individuals including the Bus Driver, the passengers on the bus, and other passersby.

307.     On the way to Haymarket Station, Defendants MBTA Officer Davie and MBTA Officer Harer entered Attorney Fraser's information into their mobile police computer.

308.     Attorney Fraser has no criminal record.

309.     Upon arriving at Haymarket Station, Defendants MBTA Officer Davie and MBTA Officer Harer presented Attorney Fraser to KTC while he stood outside of the back door of the marked MBTA police vehicle with emergency lights flashing, and restrained with handcuffs behind his back.

310.     Defendants MBTA Officer Davie and MBTA Officer Harer further damaged Attorney Fraser's reputation by publicly presenting Attorney Fraser to KTC while he stood outside of the back door of the MBTA police vehicle with emergency lights flashing, during the busy rush hour foot traffic, at a major MBTA Station, handcuffed behind his back.

311.     At Haymarket Station, KTC—a criminal known to the Commonwealth and the subject of the MBTA's 911 call—instead identified Attorney Fraser as the alleged offender and the subject of the MBTA's 911 call.

312.     Solely on the basis of KTC's false report and the suggestive identification they orchestrated, as well as and their own racial biases, discrimination, and malice, Defendants MBTA Officer Davie and MBTA Officer Harer took Attorney Fraser to the MBTA Police Station and administratively processed and jailed him.

313.     Upon returning to the MBTA Police Station to complete the administrative process and jailing of Attorney Fraser and taking inventory of his wallet, the MBTA Booking Officer Jon Erickson finally realized that the person his colleagues had so quickly and illegally arrested was an attorney licensed to practice before the Supreme Judicial Court of the Commonwealth.

314.     After learning that Attorney Fraser was a practicing lawyer, Defendant MBTA Officer Davie attempted to protect himself, as well as MBTA Officer Harer, MBTA Officer Bell and MBTA Officer Taylor from the legal ramifications of their improper police procedure and false arrest of Attorney Fraser.

315.     Defendant MBTA Officer Davie changed the order of events in the Police Report, falsely writing that "Fraser was informed he was being detained as part of an investigation." (*See* Exhibit 2.)

316.     However, the video surveillance camera for Bus #604 shows that contrary to the facts as written in Officer Davie's Police Report, no such conversation occurred.

317.     Further, Defendant Officer Davie's police report states that Attorney "Fraser asked if he could be placed in the cruiser. Fraser was placed in handcuffs and placed in the marked cruiser." (*Please see* MBTA Police Report, attached as Exhibit 2).

318.     However, the video surveillance camera for Bus #604 clearly shows that Attorney Fraser was immediately placed in handcuffs upon disembarking Bus #604 to speak to MBTA Police, and was already in handcuffs when he asked to be placed in the cruiser in order to be concealed from onlookers.

319.     By filing a police report with a false narrative of the events that occurred, MBTA Officer Davie violated Attorney Fraser's due process by fabricating evidence against an innocent citizen and placing that evidence in a police report. See Limone v. Condon, 372 F.3d 39, 44–45 (1st Cir.2004).

320.     By filing a police report with a false narrative of the events that occurred, MBTA Officer Davie has committed official misconduct, which official misconduct caused harm to Attorney Fraser.

321.     The police report was false and the video surveillance camera for Bus #604 depicts the true sequence and timing of the events, which are contrary to Defendant Office Davie's version as filed in his false police report.

322.     The Defendant MBTA Officer Davie intentionally, knowingly and maliciously made and filed the false police report.

323.     The false report was not made through inadvertence, accident, or negligence.

324.     Defendant MBTA Officer Davie falsified the police report to protect himself, as well as MBTA Officer Harer, MBTA Officer Bell and MBTA Officer Taylor from the potential legal ramifications of their improper police procedure and false arrest of Attorney Fraser.

325.     The Defendant MBTA Officer Davie's false police report was a published, written statement concerning Attorney Fraser, made to a third party. See Bazinet v. Thorpe, 190 F.Supp.3d 229, 241 (D. Mass. 2016).

326.     The Defendant MBTA Officer Davie's false police report damaged Attorney Fraser's reputation in the community, and was both defamatory, and false. See Id.

327.    The Defendant MBTA Officer Davie's false police report caused Attorney Fraser economic loss, and is otherwise actionable even without proof of economic loss. *See* Id.; Ravnikar v. Bogojavlensky, 438 Mass. 627, 782 N.E.2d 508, 510–11 (2003).

328.    Due to the severity of the felonious, indecent crime alleged by the complainant KTC in MBTA Officer Davie's false police report, and the circumstances of the resulting, very public restraint and arrest, Attorney Fraser has suffered irreparable harm as a result of the Defendant MBTA Officer Davie making and filing of a false police report.

329.    Wherefore, the Plaintiff respectfully requests that this Court:

[a]    Award money damages against the Defendant MBTA Officer Davie for libelous defamation of character based on his filing of a false and falsified police report; and

[b]    Grant such other relief as the Court deems just and reasonable.

## COUNT X – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
### *(MBTA Officer Davie, MBTA Officer Harer, MBTA Officer Bell, and MBTA Officer Taylor)*

330.    Plaintiff re-alleges and incorporates each and every fact enumerated in the preceding Paragraphs as if fully restated herein.

331.    Attorney Fraser is an attorney in good standing and licensed to practice law before the Supreme Judicial Court of the Commonwealth and the U.S. federal District Court for the District of Massachusetts.

332.    Attorney Fraser has practices law in Boston as a corporate associate attorney and civil litigator before this Honorable Court and the federal District Court.

333.    At the time of August 1, 2017 arrest, Attorney Fraser was a corporate tax attorney in the Boston office of a large, internationally known and prominent professional services firm—the largest in the world.

334.    On August 1, 2017 shortly before 6:00 p.m., Attorney Fraser left his Seaport Boulevard offices.

335.    At approximately 6:00 p.m. at the Haymarket MBTA transit station, Attorney Fraser was falsely accused of indecent assault and battery by KTC.

336.    At approximately 6:20 p.m., Defendant MBTA Officer Davie and Defendant MBTA Officer Harer responded to the MBTA's 911 emergency call, and two marked MBTA Police cruisers with sirens and emergency lights intercepted and pulled over/cut-off Bus #604 on Rutherford Avenue.

337.    MBTA Officer Bell and MBTA Officer Taylor arrived on the scene in a marked MBTA Police cruiser immediately afterward to assist MBTA Officer Davie and MBTA Officer.

338.     Immediately upon seeing Attorney Fraser, a young African American male, without probable cause and without speaking with him at all other than asking his name, MBTA Police immediately apprehended him, patted him down without reasonable suspicion that he was armed, restrained him tightly with handcuffs, and arrested Attorney Fraser—all immediately upon his disembarking Bus #604.

339.     Solely on the basis of KTC's false report and the suggestive identification they coordinated, as well as and their own racial biases, discrimination, and malice, Defendants MBTA Officer Davie and MBTA Officer Harer took Attorney Fraser to the MBTA Police Station and administratively processed and jailed him.

340.     Attorney Fraser was released from the MBTA holding cell and police station at approximately 9:10 p.m. and was notified by the bail commissioner that he would be arraigned on charges of indecent assault and battery at 9:00 a.m. on the following day, August 2, 2017, at the Boston Municipal Court.

341.     As a member of the Bar of this Commonwealth, and an upstanding member of the Boston legal community, Attorney Fraser used his own professional relationships at numerous state law enforcement agencies in an effort to contact MBTA investigators immediately after being released from jail on the night of August 1st and continuing through to the early morning of August 2, 2017.

342.     Early on the morning of August 2, 2017, a team of MBTA investigators reviewed the Haymarket Station security footage of the incident, determined that there was no evidence to support the filing of a criminal complaint against Attorney Fraser, and declined to file a criminal complaint in the matter.

343.     Prior to Attorney Fraser's case being called, the MBTA investigators notified the Suffolk County District Attorney's office that the MBTA was declining to file a criminal complaint in the matter.

344.     However, the Suffolk County District Attorney's office refused to withdraw the criminal complaint drafted by the MBTA officers, and instead that he enter a plea of "Not Guilty."

345.     A plea of "Not Guilty" would have an extremely harmful effect on Attorney Fraser's standing in and connection to the Boston legal community. Such a plea would require an appearance in Court in front of his peers to face a criminal arraignment and subsequent hearings; a pending/open case for the salacious crime of indecent assault and battery for the indefinite future; potential suspension of his license to practice law; and potentially, a criminal trial, all due to the MBTA Police's racial bias and false arrest.

346.     Attorney Fraser again used his own professional relationships in the legal community in an effort to prevent the harm that would result from a plea of "Not Guilty" when there was clear exculpatory evidence and the MBTA has declined to file a criminal complaint.

347.     Just minutes before Attorney Fraser's arraignment was called, the Suffolk County District Attorney's office received instructions to withdraw the complaint.

348.     However, Attorney Fraser's civil rights had already been violated, having been falsely accused, apprehended, handcuffed, arrested, and falsely imprisoned by the MBTA Police on August 1st, causing harm to his standing in and connection to the Boston legal community.

349.     In further damage to Attorney Fraser, he was required to make an appearance in Court on August 2nd in front of his peers, to face a criminal arraignment and potentially a pending/open case for the salacious crime of indecent assault and battery for the indefinite future; potential suspension of his license to practice law, subsequent hearings, and a trial, all due to the MBTA Police's racial bias and false arrest.

350.     In further damage to Attorney Fraser, during his own efforts to exonerate himself prior to the arraignment he had to inform numerous members of his professional network of the potential criminal charges.

351.     As a member of the Bar of the Supreme Judicial Court of Massachusetts, Attorney Fraser is under obligation to report the existence of such criminal charges to the Massachusetts Board of Bar Overseers. The existence of such a criminal complaint against an attorney is cause for suspension or revocation the license to practice law, or disbarment.

352.     The day after the arraignment, August 3, 2017, in accordance with firm policy Attorney Fraser informed a partner at his firm of the indecent assault and battery charge, the arraignment, and the resolution of the incident.

353.     Attorney Fraser was sent home from work on personal leave for the remainder of the day, and through Monday, August 7, 2017.

354.     On the morning of Tuesday, August 8, 2017, when Attorney Fraser next returned to work, he was involuntarily terminated from his employment, where he earned a salary of approximately $171,000.00 annually.

355.     The Defendants MBTA Officer Davie, MBTA Officer Harer, MBTA Officer Bell, and MBTA Officer Taylor, through their false arrest, improper police procedure, abuse of process, malicious prosecution, and filing of a false and falsified police report against Attorney Fraser, damaged his reputation causing the loss of his employment of three-years, and resulting in economic harm currently and with respect to his future expected earnings.

356.     The Defendants' MBTA Officer Davie, MBTA Officer Harer, MBTA Officer Bell, and MBTA Officer Taylor actions also caused Attorney Fraser to cancel important meetings on the evening of August 1, 2017 and on August 2, 2017

357.     The Defendants' MBTA Officer Davie, MBTA Officer Harer, MBTA Officer Bell, and MBTA Officer Taylor actions also caused to obtain and pay legal fees for criminal defense counsel and to appear before the Boston Municipal Court at 9:00 a.m. on August 2, 2017.

358.     Through their improper police procedure, discrimination, and malice, Defendants MBTA Officer Davie, MBTA Officer Harer, MBTA Officer Bell, and MBTA Officer Taylor intentionally put at risk and damaged Attorney Fraser's contractual and business relationships with numerous third parties, causing him economic harm. *See* United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 815; 551 N.E.2d 20, 23 (1990).

359.     Wherefore, the Plaintiff respectfully requests that this Court:

[a] Award money damages for current and future lost wages he would have earned for the Defendant MBTA Officers' intentional and tortious interference with Attorney Fraser's business relationship with his firm;

[b] Award money damages against the Defendant MBTA Officers for their intentional and tortious interference with Attorney Fraser's business relationships with members of his professional network; and

[b] Grant such other relief as the Court deems just and reasonable.

## COUNT XI – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### *(MBTA Officer Davie, MBTA Officer Harer, MBTA Officer Bell, and MBTA Officer Taylor)*

360.    Plaintiff re-alleges and incorporates each and every fact enumerated in the preceding Paragraphs as if fully restated herein.

361.    Attorney Fraser is an attorney in good standing and licensed to practice law before the Supreme Judicial Court of the Commonwealth.

362.    On August 1, 2017 shortly before 6:00 p.m., Attorney Fraser left his Seaport Boulevard offices.

363.    At approximately 6:00 p.m. at the Haymarket MBTA transit station, Attorney Fraser was falsely accused of indecent assault and battery by KTC.

364.    At approximately 6:20 p.m., Defendant MBTA Officer Davie and Defendant MBTA Officer Harer responded to the MBTA's 911 emergency call, and two marked MBTA Police cruisers with emergency lights intercepted and pulled over/cut-off Bus #604 on Rutherford Avenue.

365.    Defendants MBTA Officer Bell and MBTA Officer Taylor arrived on the scene in a marked MBTA Police cruiser immediately afterward to assist MBTA Officer Davie and MBTA Officer.

366.    Immediately upon seeing Attorney Fraser, a young African American male, without probable cause and without speaking with him at all other than asking his name, MBTA police immediately apprehended him, patted him down without reasonable suspicion that he was armed, restrained him tightly with handcuffs, and arrested Attorney Fraser—all immediately upon his disembarking Bus #604.

367.    Solely on the basis of KTC's false report and the suggestive identification they coordinated, as well as and their own racial biases, discrimination, and malice, Defendants MBTA Officer Davie and MBTA Officer Harer took Attorney Fraser to the MBTA Police Station and administratively processed and jailed him.

368.    Attorney Fraser was released from the MBTA holding cell and police station at approximately 9:10 p.m. and was notified by the bail commissioner that he would be arraigned on charges of indecent assault and battery at 9:00 a.m. on the following day, August 2, 2017, at the Boston Municipal Court.

369.     As a member of the Bar of this Commonwealth, and an upstanding member of the Boston legal community, Attorney Fraser used his own professional relationships at numerous state law enforcement agencies in an effort to contact MBTA investigators immediately after being released from jail on the night of August 1st and continuing through to the early morning of August 2, 2017.

370.     Early on the morning of August 2, 2017, a team of MBTA investigators reviewed the Haymarket Station security footage of the incident, determined that there was no evidence to support the filing of a criminal complaint against Attorney Fraser, and declined to file a criminal complaint in the matter.

371.     Prior to Attorney Fraser's case being called, the MBTA investigators notified the Suffolk County District Attorney's office that the MBTA was declining to file a criminal complaint in the matter.

372.     However, the Suffolk County District Attorney's office refused to withdraw the criminal complaint drafted by the MBTA officers, and instead that he enter a plea of "Not Guilty."

373.     A plea of "Not Guilty" would have an extremely harmful effect on Attorney Fraser's standing in and connection to the Boston legal community. It would require an appearance in Court in front of his peers to face a criminal arraignment and subsequent hearings; a pending/open case for the salacious crime of indecent assault and battery for the indefinite future; potential suspension of his license to practice law; and potentially, a criminal trial and the risk of incarceration, all due to the MBTA Police's racial bias and false arrest.

374.     Attorney Fraser again used his own professional relationships in the legal community in an effort to prevent the harm that would result from a plea of "Not Guilty" when there was clear exculpatory evidence and the MBTA has declined to file a criminal complaint.

375.     Just minutes before Attorney Fraser's arraignment was called, the Suffolk County District Attorney's office received instructions to withdraw the complaint.

376.     However, Attorney Fraser's civil rights had already been violated, having been falsely accused, apprehended, handcuffed, arrested, and falsely imprisoned by the MBTA Police on August 1st, causing harm to his standing in and connection to the Boston legal community.

377.     In further damage to Attorney Fraser, he was required to make an appearance in Court on August 2nd in front of his peers, to face a criminal arraignment and potentially a pending/open case for the salacious crime of indecent assault and battery for the indefinite future; potential suspension of his license to practice law, subsequent hearings, and a trial, all due to the MBTA Police's racial bias and false arrest.

378.     In further damage to Attorney Fraser, during his own efforts to exonerate himself prior to the arraignment he had to inform numerous members of his professional network of the potential criminal charges.

379.     As a member of the Bar of the Supreme Judicial Court of Massachusetts, Attorney Fraser is under obligation to report the existence of such criminal charges to the Massachusetts Board of Bar Overseers. The existence of such a criminal complaint against an attorney is cause for suspension or revocation the license to practice law, or disbarment.

380.     The day after the arraignment, August 3, 2017, in accordance with firm policy Attorney Fraser informed a partner at his firm of the indecent assault and battery charge, avoided arraignment, and the resolution of the incident.

381.     Attorney Fraser was sent home from work on personal leave for the remainder of the day, and through Monday, August 7, 2017.

382.     On Tuesday, August 8, 2017, Attorney Fraser returned to work, and on that morning he was involuntarily terminated from his employment.

383.     Considering the salacious and indecent nature of the crimes falsely alleged, which then resulted in a very public and humiliating arrest, false imprisonment, personal injury, official misconduct, and civil rights violations, the Defendants' MBTA Officer Davie, MBTA Officer Harer, MBTA Officer Bell and MBTA Officer Taylor have intentionally caused him severe emotional distress.

384.     The commencement of a malicious criminal prosecution against Attorney Fraser that was caused by the Defendant MBTA Officers' racial discrimination and false arrest of Attorney Fraser have intentionally caused him severe emotional distress.

385.     The swift arrest of Attorney Fraser upon sight, when he was simply attempting to speak with the Defendant MBTA Officers has eroded Attorney Fraser's trust in the police and has intentionally caused him severe emotional distress.

386.     Defendant Officer Davie's submission of a false police report has eroded Attorney Fraser's trust in the police and has intentionally caused him severe emotional distress.

387.     Having been required to inform members of his professional network of the salacious criminal charges against him has intentionally caused Attorney Fraser severe emotional distress.

388.     The prospect of having to plead "Not Guilty" at the arraignment and the extremely harmful effect on Attorney Fraser's standing in and connection to the Boston legal community has intentionally caused Attorney Fraser severe emotional distress.

389.     The threat of having to inform the Massachusetts Board of Bar Overseers of the existence of a criminal complaint against him, and the threat of suspension or revocation of his license to practice law, or disbarment, has intentionally caused Attorney Fraser severe emotional distress.

390.     The August 2, 2017 appearance in Court in front of his peers to face a criminal arraignment and subsequent hearings, as well as the prospect of a pending/open case for the salacious crime of indecent assault and battery for the indefinite future has intentionally caused Attorney Fraser severe emotional distress.

391.     Being terminated from his employment at a large, internationally known professional services firm—the largest in the world, as a result of the MBTA Officers' racial discrimination and false arrest has intentionally caused Attorney Fraser severe emotional distress.

392.     Having to continue to reside in Chelsea, MA, and to continue taking the MBTA 111 bus route from Haymarket Station on a daily basis while knowing that many of his fellow commuters witnessed his arrest, has intentionally caused Attorney Fraser severe emotional distress.

393.     The Defendant MBTA Officers intended, knew, or should have known that their improper police procedure, false police report, discrimination, bias, and malice would cause Attorney Fraser emotional distress. *See* Bazinet v. Thorpe, 190 F.Supp.3d 229, 240 (2016).

394.     The Defendant MBTA Officers' conduct was extreme and outrageous and caused Attorney Fraser severe emotional distress. *See* Id.

395.     Attorney Fraser is an upstanding member of the Boston and Chelsea communities and an attorney in good standing and licensed to practice law before the Supreme Judicial Court of the Commonwealth, and a reasonable person in his position would have suffered emotional distress under the circumstances of the case.

396.     Attorney Fraser is an African-American male who was falsely accused, then immediately apprehended, restrained, and arrested by four (4) white MBTA police officers simultaneously, prior to any inquiry whatsoever.

397.     Considering the recent climate of relations between the police and the African-American community as highlighted in recent nationwide media, Attorney Fraser feared for his life and a reasonable person in his position would have suffered severe emotional distress under the circumstances of the case.

398.     The Defendant MBTA Officers' conduct was outrageous in character, extreme in degree, and goes "beyond all possible bounds of decency, such that it should be regarded as atrocious, and utterly intolerable in a civilized community." *See* Polay v. McMahon, 468 Mass. 379, 10 N.E.3d 1122, 1128 (2014).

399.     Wherefore, the Plaintiff respectfully requests that this Court:

[a]  Award money damages against the Defendants MBTA Officer Davie, MBTA Officer Harer, MBTA Officer Bell and MBTA Officer Taylor for their intentional infliction of emotional distress upon Attorney Fraser; and

[b]  Grant such other relief as the Court deems just and reasonable.

## COUNT XII – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### *(MBTA, MBTA Officer Davie, MBTA Officer Harer, MBTA Officer Bell, and MBTA Officer Taylor)*

400.     Plaintiff re-alleges and incorporates each and every fact enumerated in the preceding Paragraphs as if fully restated herein.

401.     Attorney Fraser is an attorney in good standing and licensed to practice law before the Supreme Judicial Court of the Commonwealth.

402.     On August 1, 2017 shortly before 6:00 p.m., Attorney Fraser left his Seaport Boulevard offices.

403.     At approximately 6:00 p.m. at the Haymarket MBTA transit station, Attorney Fraser was falsely accused of indecent assault and battery by KTC.

404.    At approximately 6:20 p.m., Defendant MBTA Officer Davie and Defendant MBTA Officer Harer responded to the MBTA's 911 emergency call, and two marked MBTA Police cruisers with emergency lights intercepted and pulled over/cut-off Bus #604 on Rutherford Avenue.

405.    Defendants MBTA Officer Bell and MBTA Officer Taylor arrived on the scene in a marked MBTA Police cruiser immediately afterward to assist MBTA Officer Davie and MBTA Officer.

406.    Immediately upon seeing Attorney Fraser, a young African American male, without probable cause and without speaking with him at all other than asking his name, MBTA police immediately apprehended him, patted him down without reasonable suspicion that he was armed, restrained him tightly with handcuffs, and arrested Attorney Fraser—all immediately upon his disembarking Bus #604.

407.    Solely on the basis of KTC's false report and the suggestive identification they coordinated, as well as and their own racial biases, discrimination, and malice, Defendants MBTA Officer Davie and MBTA Officer Harer took Attorney Fraser to the MBTA Police Station and administratively processed and jailed him.

408.    Attorney Fraser was released from the MBTA holding cell and police station at approximately 9:10 p.m. and was notified by the bail commissioner that he would be arraigned on charges of indecent assault and battery at 9:00 a.m. on the following day, August 2, 2017, at the Boston Municipal Court.

409.    As a member of the Bar of this Commonwealth, and an upstanding member of the Boston legal community, Attorney Fraser used his own professional relationships at numerous state law enforcement agencies in an effort to contact MBTA investigators immediately after being released from jail on the night of August 1st and continuing through to the early morning of August 2, 2017.

410.    Early on the morning of August 2, 2017, a team of MBTA investigators reviewed the Haymarket Station security footage of the incident, determined that there was no evidence to support the filing of a criminal complaint against Attorney Fraser, and declined to file a criminal complaint in the matter.

411.    Prior to Attorney Fraser's case being called, the MBTA investigators notified the Suffolk County District Attorney's office that the MBTA was declining to file a criminal complaint in the matter.

412.    However, the Suffolk County District Attorney's office refused to withdraw the criminal complaint drafted by the MBTA officers, and instead that he enter a plea of "Not Guilty."

413.    A plea of "Not Guilty" would have an extremely harmful effect on Attorney Fraser's standing in and connection to the Boston legal community. It would require an appearance in Court in front of his peers to face a criminal arraignment and subsequent hearings; a pending/open case for the salacious crime of indecent assault and battery for the indefinite future; potential suspension of his license to practice law; and potentially, a criminal trial and the risk of incarceration, all due to the MBTA Police's racial bias and false arrest.

414.    Attorney Fraser again used his own professional relationships in the legal community in an effort to prevent the harm that would result from a plea of "Not Guilty" when there was clear exculpatory evidence and the MBTA has declined to file a criminal complaint.

415.    Just minutes before Attorney Fraser's arraignment was called, the Suffolk County District Attorney's office received instructions to withdraw the complaint.

416.    However, Attorney Fraser's civil rights had already been violated, having been falsely accused, apprehended, handcuffed, arrested, and falsely imprisoned by the MBTA Police on August 1st, causing harm to his standing in and connection to the Boston legal community.

417.    In further damage to Attorney Fraser, he was required to make an appearance in Court on August 2nd in front of his peers, to face a criminal arraignment and potentially a pending/open case for the salacious crime of indecent assault and battery for the indefinite future; potential suspension of his license to practice law, subsequent hearings, and a trial, all due to the MBTA Police's racial bias and false arrest.

418.    In further damage to Attorney Fraser, during his own efforts to exonerate himself prior to the arraignment he had to inform numerous members of his professional network of the potential criminal charges.

419.    As a member of the Bar of the Supreme Judicial Court of Massachusetts, Attorney Fraser is under obligation to report the existence of such criminal charges to the Massachusetts Board of Bar Overseers. The existence of such a criminal complaint against an attorney is cause for suspension or revocation the license to practice law, or disbarment.

420.    The day after the arraignment, August 3, 2017, in accordance with firm policy Attorney Fraser informed a partner at his firm of the indecent assault and battery charge, avoided arraignment, and the resolution of the incident.

421.    Attorney Fraser was sent home from work on personal leave for the remainder of the day, and through Monday, August 7, 2017.

422.    On Tuesday, August 8, 2017, Attorney Fraser returned to work, and on that morning he was involuntarily terminated from his employment.

423.    Considering the salacious and indecent nature of the crimes falsely alleged, which then resulted in a very public and humiliating arrest, false imprisonment, personal injury, official misconduct, and civil rights violations, the Defendants' MBTA Officer Davie, MBTA Officer Harer, MBTA Officer Bell and MBTA Officer Taylor knew or should have known that their actions would cause him severe emotional distress.

424.    The Defendant MBTA Officers knew or should have known that the commencement of a malicious criminal prosecution against Attorney Fraser based on racial discrimination and their false arrest of Attorney Fraser would cause him severe emotional distress.

425.    The swift arrest of Attorney Fraser upon sight, when he was simply attempting to speak with the Defendant MBTA Officers has eroded Attorney Fraser's trust in the police and has caused him severe emotional distress.

426.    Defendant Officer Davie knew or should have known that the submission of a false police report would eroded Attorney Fraser's trust in the police and cause him severe emotional distress.

427.    The MBTA and its Police Officers' negligent actions required Attorney Fraser to inform members of his professional network of the salacious criminal charges against him and caused Attorney Fraser severe emotional distress.

428.    The MBTA and its Police Officers' negligent actions required Attorney Fraser to face the prospect of having to plead "Not Guilty" at the arraignment and the extremely harmful effect on his standing in and connection to the Boston legal community and caused Attorney Fraser severe emotional distress.

429.    The MBTA and its Police Officers' negligent actions required Attorney Fraser to face the threat of having to inform the Massachusetts Board of Bar Overseers of the existence of a criminal complaint against him, and the threat of suspension or revocation of his license to practice law, or disbarment, and has caused Attorney Fraser severe emotional distress.

430.    The MBTA and its Police Officers' negligent actions required Attorney Fraser to appear at the August 2, 2017 arraignment in front of his peers to face criminal charges and potentially subsequent hearings, as well as the prospect of a pending/open case for the salacious crime of indecent assault and battery for the indefinite future, and has caused Attorney Fraser severe emotional distress.

431.    The MBTA and its Police Officers' negligent actions resulted in Attorney Fraser being terminated from his employment and has caused Attorney Fraser severe emotional distress.

432.    Having to continue to reside in Chelsea, MA, and to continue taking the MBTA 111 bus route from Haymarket Station on a daily basis while knowing that many of his fellow commuters witnessed his arrest, has caused Attorney Fraser severe emotional distress.

433.    The Defendant MBTA Officers intended, knew, or should have known that their improper police procedure, false police report, discrimination, bias, and malice would cause Attorney Fraser emotional distress. *See* <u>Bazinet v. Thorpe</u>, 190 F.Supp.3d 229, 240 (2016).

434.    The Defendant MBTA Officers' conduct was extreme and outrageous and caused Attorney Fraser severe emotional distress. *See* <u>Id</u>.

435.    Attorney Fraser is an upstanding member of the Boston and Chelsea communities and an attorney in good standing and licensed to practice law before the Supreme Judicial Court of the Commonwealth and the U.S. federal District Court, and a reasonable person in his position would have suffered emotional distress under the circumstances of the case.

436.    Attorney Fraser is an African-American male who was falsely accused, then immediately apprehended, restrained, and arrested by four (4) white MBTA police officers simultaneously, prior to any inquiry whatsoever.

437.    Considering the recent climate of relations between the police and the African-American community as highlighted in recent nationwide media, Attorney Fraser feared for his life and a reasonable person in his position would have suffered severe emotional distress under the circumstances of the case.

438.    The Defendant MBTA Officers' conduct was outrageous in character, extreme in degree, and goes "beyond all possible bounds of decency, such that it should be regarded as atrocious, and utterly intolerable in a civilized community." *See* <u>Polay v. McMahon</u>, 468 Mass. 379, 10 N.E.3d 1122, 1128 (2014).

439.     Wherefore, the Plaintiff respectfully requests that this Court:

[a] Award money damages against the Defendants MBTA Officer Davie, MBTA Officer Harer, MBTA Officer Bell and MBTA Officer Taylor for their intentional infliction of emotional distress upon Attorney Fraser; and

[b] Grant such other relief as the Court deems just and reasonable.

## <u>COUNT XIII – DAMAGES AND PRAYERS FOR RELIEF</u>

440.     Plaintiff re-alleges and incorporates each and every fact enumerated in the preceding Paragraphs as if fully restated herein.

441.     Wherefore, the Plaintiff respectfully requests that this Court:

[a] Award Attorney Fraser money damages against all of the Defendants for each of the aforementioned Claims; and

[b] Award money damages against all of the Defendants for attorneys' fees and costs of bringing this action, plus out of pocket expenses, litigation expenses, and pre- and post-judgment interest as provided by law; and

[c] Award money damages for current and future lost wages against all of the Defendants for their intentional and tortious interference with Attorney Fraser's business relationship with his employer, at the rate of $171,000 per year;

[c] Award punitive damages against all of the Defendants to punish the Defendants and to deter further wrongdoing; and

[d] Award special damages to be determined at trial; and

[e] Order the expungement of all police records relating to the MBTA Police's arrest of Attorney Fraser, including all police reports, court documents, mug shots, etc.; and

[d] Grant such other relief as the Court deems just and reasonable.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all issues appropriate for a jury.


Respectfully submitted,
Timothy Fraser,
By his attorneys,

Dated: July 17, 2020

Joseph D. Feaster, Jr. (BBO# 160720)
Andrea M.A. Osborne (BBO# 569206)
183 State Street, Suite 6
Boston, MA  02109
Tel.: (617)723-0400
Fax: (617)723-7234
Email: jfeaster@mckenzielawpc.com

**EXHIBIT 1**

**MBTA Route / Map of Incident**

EXHIBIT A - MBTA ROUTE MAP



**EXHIBIT 2**

**MBTA Police Report**

# MBTA Transit Police Affidavit

| **Defendant's Information** | | Case No. 2017-6643 | | ARREST | |
|---|---|---|---|---|---|
| | | Date: | 08/01/2017 | Court: | BMC |
| Name: (L/F/I) **FRASER, Timothy** | | D.O.B: | ▮▮▮▮▮ | TPSA: | 1 |
| Street Address: ▮▮▮▮▮▮ | | | | Race: B | Sex: M |
| City: Chelsea | | State: | Ma | Zip: | 02150 |
| Social Security: ▮▮▮▮▮ | | Height: | | Weight: | |
| *NOTE: If juvenile, enter parent or guardian name | | | | | |

| Charges: | Chapter/Section: | PCF # |
|---|---|---|
| 1. Indecent Assault & Battery | | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |

| Officer #1 Name: | Harer | ID # 433 |
|---|---|---|
| Officer #2 Name: | Davie | ID# 464 |

**Narrative:**

1.   On Tuesday August 1, 2017, at approximately 6:20pm, while assigned as the A126, Officer Davie and I (Officer Harer), were dispatched to Haymarket MBTA Station busway for a disorderly person.  While en route to the call we were updated the incident was a Indecent Assault and Battery , and the victim was keeping the suspect from leaving.  Upon arrival we were approached by the Victim who will be referred to as KTC (Known To Commonwealth), who reported she had been sexually assaulted and the suspect had just fled the station, North on North Washington Street and may have boarded another MBTA bus.  KTC had taken a picture of the suspect with her cell phone as he was leaving the station and showed it to Officer Davie and I.  Officer Davie returned to the marked Transit Police cruiser and made his way on North Washington St, looking for the suspect.  I asked KTC further details of the incident prior to being picked up by the A127 (Officers Taylor & Bell)

2.   The victim reported, the suspect later identified as Timothy Fraser, had rubbed his penis against her buttocks and when she confronted him he smiled at her and then attempted to leave the station, which he was successful in doing just prior to our arrival.  Based on the description of the suspect given by the victim, as a brown male wearing a blue and white check-

Officer #1 Signature: _B. H_      ID# 433

Date 8 / 1 / 17    Supervisor's ID: 188



# MBTA Transit Police Affidavit -Con't

ered shirt, tight black pants, with a short haircut and wearing glasses, as well as the image of the suspect taken by the victim , Officer Davie checked North Washington St, heading towards the Charlestown bridge. Officer Davie stopped MBTA bus #604 on Rutherford ave, just prior to the Route 1 North ramp. I along with Officers Bell and Taylor arrived for assistance. As Officer Davie instructed the operator to open the doors he was met by Fraser at the door. Fraser was wearing a blue and white checkered shirt, tight black pants and glasses. Fraser was informed he was being detained as part of an investigation. Fraser asked if he could be placed in the cruiser. Fraser was placed in handcuffs and placed in the marked Transit Police cruiser and transported back to Haymarket MBTA Station busway where the victim was waiting.

3.     I then spoke to the victim regarding the incident. I asked her for a more detailed account of what had transpired. The victim reported, she was leaning again the bus stop sign near the edge of the curb where the bus stops, when Fraser approached her and moved in behind her rubbing his penis against the back of her buttocks. The victim stated, there was no need for him to be that close to her and when asked how she knew it was his penis rubbing against her buttocks, the victim stated, he was wearing tight pants and she could feel that he was hard and knows what a penis feels against her buttocks.

4.     The victim was brought to the front of the busway where the marked Transit Police cruiser containing Fraser was parked. The victim was instructed she was going to be shown an individual who may or may not have been involved in her incident. Officer Davie removed Fraser from the cruiser. The victim positively identified Fraser as the individual who indecently assaulted her. Fraser was informed he was under arrest for indecent assault and battery and transported back to Transit Police Headquarters to be booked in the normal manner.

Officer #1 Signature: _____          ID# 433

Date 8 / 1 / 17     Supervisor's ID: 188

**EXHIBIT 3**

**Hospital Intake and Diagnosis**

ADM: 8/3/2017   D/C:

# After Visit Summary ████████████

## Summary of Your Visit:

### Diagnoses this visit
Your diagnoses were COMPRESSION OF NERVE and NUMBNESS AND TINGLING IN BOTH HANDS.

### Treatment Team
You were seen by Kathleen Marie Powis, MD.

### Medication Received
None

### Vital Signs

| Blood Pressure | Pulse | Temperature | Respirations | Height | Weight |
|---|---|---|---|---|---|
| 119/72 | 72 | 36.7 °C (98 °F) (Tympanic) | 20 | 1.778 m (5' 10") | 72.6 kg (160 lb) |

| Oxygen Saturation | Body Mass Index | | | | |
|---|---|---|---|---|---|
| 99% | 22.96 kg/m2 | | | | |

## Discharge Instructions and Follow-ups:

### Specific Patient Instructions
The numbness you're experiencing may be due to a nerve compression. You have good overall function in terms of muscular strength and reflexes in your hands bilaterally. Please take ibuprofen 600 mg once every 6 hours as needed for the numbness. If this does not resolve over the next 48 hours, you would benefit from follow-up with a neurologist. This could be coordinated through your primary care provider's office.

### *Summary of your medication changes:*

#### Start

| | Dose, Frequency, and Details |
|---|---|
| **ibuprofen 600 MG tablet**<br>Also known as: ADVIL,MOTRIN | Take 1 tablet (600 mg total) by mouth every 6 (six) hours as needed. |

### *Where to Get Your Medications*

### Information about where to get these medications is not yet available

| ! Ask your nurse or doctor about these medications |
|---|
| ☐   ibuprofen 600 MG tablet |